### BARNARD KETCHUM *v.* HENRY W. CATLIN.

A contract, which is made while the parties are under a mutual mistake as to material facts, affecting its subject matter, is invalid, and may be avoided in a court of law.

The defendant, on the twenty second of November, shipped a quantity of produce from Burlington to his consignees in Boston, to be sold; on the twenty fourth of November an agent of the plaintiff purchased the property of the defendant, under the belief of both parties, that the property was then in a warehouse at Whitehall, where the plaintiff contemplated receiving it, and the defendant delivered to the agent an order upon the warehouseman for the property, which order was presented on the twenty fifth of November; the belief of the defendant, that the property was at Whitehall, was based upon the representations of the agent,—who believed the same ; on the twenty ninth of November the agent paid to the defendant $75, towards the purchase, supposing that the property had been delivered upon the order; the property was never in fact landed at Whitehall, but was received by the consignees at Boston on the third of December and was commingled by them with other property of the same kind, belonging to the defendant, so that it could not easily be distinguished ; on the twenty fifth of December the defendant informed his con-

signees, that he had sold the property to the plaintiff; but the property was afterwards sold by the consignees and credited to the defendant; *Held*, that the contract was invalid, by reason of the mutual mistake as to the situation of the property at the time, and that the plaintiff, after demand, was entitled to recover from the defendant the amount paid by him towards the purchase, in an action for money had and received.

INDEBITATUS ASSUMPSIT for money had and received. Plea, the general issue, and trial by the court, September Term, 1847,—HALL, J., presiding.

On trial the facts appeared to be as follows. The defendant, on the twenty second of November, 1845, shipped, at Burlington in this state, eleven tubs of butter, three casks of cheese and six bags of beans, to Smith & Bishop, commission merchants at Boston, for sale upon commission. On the twenty fourth of the same month an agent of the plaintiff, then on his way to Montreal, purchased the property of the defendant, at Burlington, with knowledge of the shipment, but under the belief of both parties, that the property was then at the store house of one Bascom, at Whitehall, where it was contemplated the plaintiff would receive it; and to enable him to do so the defendant gave to the agent an order on Bascom for it. The belief of the defendant, that the property was at Whitehall, was derived wholly from the statements made by the agent,—who believed them to be true. The order was immediately sent to Bascom, and was received by him on the twenty fifth of November; but the property had never been at his store house, and the plaintiff did not receive it. The agent, on his return from Montreal, on the twenty ninth of November, paid to the defendant $75,00 towards the purchase, supposing at the time that the property had been obtained upon the order. The property was received by Smith & Bishop on the third of December, 1845, and became so commingled with other property, of the same kind, consigned by the defendant to them, that the butter and cheese could not be distinguished from such other property. The defendant, by letter of the twenty fifth of December, 1845, informed Smith & Bishop, that he had sold the property shipped on the twenty second of November. The property was afterwards sold by Smith & Bishop and the proceeds credited to the defendant in their general account, which, for sales of produce, amounted to about $14,000 per year. Smith & Bishop supposed

Ketchum *v.* Catlin.

that they had fully accounted for the property to the defendant; but there had always remained due to the defendant, upon their account, an amount greater than the amount of the proceeds of the property in question, and the defendant had never intended to receive those proceeds. A portion of the defendant's butter was sold on credit, to persons who had become insolvent, and payment could not be obtained; but whether such loss occurred on the butter shipped on the twenty second of November could not be ascertained, by reason of its having been commingled with butter shipped at other times. The plaintiff never notified Smith & Bishop of his purchase, and made no other attempt to obtain the property, or the avails of it, than by the presentation of the order on Bascom. The plaintiff demanded of the defendant, previous to the commencement of this suit, the money paid to him towards the purchase; and now claimed to recover that amount.

The county court rendered judgment for the plaintiff, for the amount paid by him, with interest from the time of payment. Exceptions by defendant.

*C. D. Kasson* and *E. Edgerton*, for defendant, insisted, first, that the title to the property vested in the plaintiff at the time of sale, and that it was analogous to a sale of a cargo at sea, the property being in such condition, that it could not be delivered,—to which point they cited Long on Sales 149, 163–170; 1 Taunt. 459; *Hinde v. Whitehouse*, 7 East 558; *Lucas v. Dorrien*, 7 Taunt. 278, [2 E. C. L. 105;] *Searle v. Keeves*, 2 Esp. R. 598; *Phillimore v. Barry*, 1 Camp. 513; *Greaves v. Hepke*, 2 B. & Ald. 131; *Davis v. James*, 5 Burr. 2680; *Davis v. Peck*, 8 T. R. 330; *King v. Meredith*, 2 Camp. 639;—and second, that if it were to be regarded as merely a bargain and sale, the defendant had fully performed upon his part, and the failure of the plaintiff to receive the property, or its avails, was wholly owing to his own *laches*, and would not entitle him to treat the contract as invalid and recover back the purchase money.

*Briggs & Williams*, for plaintiff, claimed that the contract was made upon an assumed state of facts, which induced the contract, as to which there was a mutual mistake,—both parties believing that the property was at Bascom's, in Whitehall, when in fact it had

25

never been there,—and that therefore this action would lie to re-cover back the money paid towards the purchase; and they cited 2 Saund. Pl. & Ev. 674, Story on Cont. 69, sec. 107, 2 Smith's Lead. Cas. 243, *Kelly* v. *Solari*, 9 M. & W. 54, and *Wheadon v. Olds*, 20 Wend. 174.

The opinion of the court was delivered by

BENNETT, J. The only question in this case arises upon the facts found by the bill of exceptions; and the only point, on which I have been led to doubt, is, whether, in a court of law, they were sufficient to invalidate the contract and enable the plaintiff to re-cover back the money, which he had paid to the defendant towards the produce, which he had contracted to purchase.

It seems to be well settled in chancery, that if a contract is made in mutual error of material facts, which have induced the contract, it is invalid, and may be set aside. This is upon the principle, mainly, that, when the parties are under a mutual mistake as to ma-terial facts, affecting the subject matter of the contract, there is a want of a binding assent; and we think a contract so made may be avoided in a court of law. In *Flight* v. *Booth*, 1 Bing. N. C. 370, [27 E. C. L. 421,] TINDAL, Ch. J., lays the rule down thus, " When the misrepresentations are in a material and substantial point, so far affecting the subject matter of the contract, that it may be supposed, that, but for the misrepresentations, the purchaser would not have entered into the contract at all, ·the contract is avoided altogether, though the misrepresentations did not proceed *from fraud.*" In *Mowatt* v. *Wright*, 1 Wend. 362, SAVAGE, Ch. J., thus sums up the law on this subject; " If," he says, " the parties to a contract, believing that a certain state of facts exists, come to an agreement, with such belief for *its basis*, on discovering their mutual error they are remitted to their original rights." The case of *Case* v. *Prentice*, 3 M. & S. 344, is decided upon the same prin-ciple. In *Wheadon* v. *Olds*, 20 Wend. 174, the agreement as to a quantity of oats, sold in a certain bin, was made upon a mistaken basis; and the contract, so far as it fixed the quantity of oats, was set aside. The parties supposed, that five hundred bushels of oats had been measured out of the bin, and, upon such supposition, the amount remaining in the bin was agreed upon, when in fact but two hundred and fifty bushels had been measured out.

The plaintiff, in this case, wanted the property he contracted for at Whitehall, and not at Boston; and it was upon the supposition, that he was to receive the property at Whitehall, that he entered into the contract. We think this was *material;* and that without it the contract would not have been made; and if so, the right of property did not pass from Catlin to the plaintiff. When it was discovered, that the parties, in making this contract, had proceeded upon a mutual mistake as to the *situs* of the property, they mutually had the privilege of being remitted to their original rights; and Catlin, having notice of this mistake, must be liable to refund what he had received,—especially on demand; and the case shows, that a demand was made, before the action was brought. The fact, that Catlin supposed, from the representations of the agent of the plaintiff, that the property was at Whitehall, can make no difference, Both parties acted *bona fide*, but none the less upon a *mistaken basis*.

It is claimed in argument, that the plaintiff has made the property his own, by reason of his own *laches*. But we think not. He was under no obligation to go to Boston for the property; and at the time the contract was made, the property, instead of being at Whitehall, was on its way to Boston, where in due time it was received by the consignees of the defendant, as his property, and became so commingled with his other property, of the like kind, as to render it undistinguishable. The consignees sold the whole property; and the entire avails of this and the other property were credited to the defendant, without distinction, or the means of distinction. It does not appear, at what precise time the defendant had notice, that the property had never been landed at Whitehall; but on the twenty fifth day of December he wrote to his consignees, at Boston, that he had sold the property shipped on the twenty-second of November, but he did not then direct the consignees not to sell the property on his account. After this the consignees did sell the property, and the avails were by them credited to Catlin. There has been no *laches* on the part of the plaintiff, which have operated to the injury of Catlin; and certainly there is no reason, why the defendant should claim, that the plaintiff has made the property his own on any such ground.

The judgment of the county court is affirmed.