## GRIFFITH v. SEBASTIAN COUNTY.

1. COUNTIES: *Causes of action against: Application of Act of February 27, 1879.*

   The act of February 27, 1879, repealing all laws declaring counties to be corporations and prohibiting suits against them elsewhere than in the County Court, has no application to a cause of action in equity which had already accrued.

2. EQUITABLE RELIEF: *Against deed founded on mistake as to removal of county seat.*

   A. conveyed to Sebastian county for the nominal consideration of one dollar, lots in Fort Smith to be used as a site for a court house. The conveyance was made under a misapprehension, common to both parties, that Fort Smith had become the county seat, and the anticipated enhancement in value of adjacent lands belonging to A. was the real consideration for the deed. It was afterwards decided in *Patterson v. Temple, 27 Ark., 202,* that the county seat had not

been removed to Fort Smith, but remained at Greenwood, and A. filed a bill to cancel the deed. *Held:* That the deed was founded on an assumption as to the removal of the county seat which was a mutual mistake of the parties against which A. was entitled to relief in equity, as compensation could be required for improvements made by the county and the collection of taxes enforced for the years during which the county held the legal title.

APPEAL from *Sebastian* Circuit Court, in Chancery, Fort Smith District.

R. B. RUTHERFORD, Judge.

*Sol F. Clark* for appellant.

The county seat was never removed from Greenwood at all (*27 Ark.*, *217*), and the acts and proceedings of the commissioners in locating the county seat on the block, and in securing the deed from the plaintiff, was done under a mistake as to their authority—under a mistake of fact as to whether the county seat was removed by the said election. Plaintiff never received one cent of consideration for the property, legal or equitable. The case comes fairly within the definition of a legal fraud, and the county held the legal title as a naked trustee for the benefit of plaintiff. *Bispham Eq., pp. 254, 255; 2 Phillips, 425; 5 H. L. Cas., 627; 3 Otto, 55, 62; 4 DeG. & J., 78.*

Plaintiff's equity is equally well founded on *accident* or *mistake*, a mistake of all parties concerned. *Bisp. Eq., secs. 23, 183, 185, 187, 473, 474, 575,* and cases cited ; *1 Story Eq. Jur., sec. 142 et seq.*

The case of *Rogers v. Sebastian Co., 21 Ark., 440,* is in no sense a precedent.

The proceedings to locate were all absolutely void. The commissioners who contracted for the lots were not agents of the county, did not represent the county, and could not bind

the county. Griffith's deed was never delivered to the county, for the commissioners had no authority to accept a delivery for the county. To render a conveyance valid the deed must be delivered. *3 Wash. Real Prop.*, *292*.

See also *3 Wait's Ac. and Def.*, *165–6; 1 Ves.*, *126; 12 Simons*, *463; 11 Peters*, *71; 13 How.* (*U. S.*), *66; 18 Conn.*, *101; 114 U. S.*, *239*.

It is contended that counties cannot be sued since *Acts 1879, p. 13*. But this act was disregarded in *42 Ark.*, *54*, and *44 Ark.*, *225.*

The act does not apply to cases ·like this, over which the County Court has no jurisdiction. If it did it would take away all remedy and would be unconstitutional.

*Clendening & Sandels* and *Rogers & Read* for appellee.

1. A county cannot be sued, except through the County Court. *Mansf. Dig.*, *secs. 1065–6–7*.

2. The county was authorized to accept the deed for the lots. *30 Am. Dec.*, *212; 41 Ind.*, *212; 29 Mo.*, *324; 50 Mo.*, *576; 9 Humph.*, *304; 98 U. S.*, *621*.

The Statutes of Arkansas permitted land to be so taken. *Gould's Dig.*, *p. 287, secs. 4 and 5, p. 200; sec. 9, p. 296; sec. 12; 38 Ark.*, *463*.

Admitting that there was a parol condition that the lots were to be used only for a court house for the whole county, yet the county proceeded to carry out such condition, and the General Assembly made it impossible to comply with it. This relieved the county from the condition, and would have done so had the condition been written in the deed. *5 Cow.* (*N. Y.*), *538; 1 Salk.*, *198*.

The appellants seek to import a parol condition into a deed absolute, making it the consideration of the conveyance, and

then attempt to show failure of the consideration. This can-
not be done. *21 Ark., 441; 30 Am. Dec., 212.*

If there was a *mistake*, it was as to the *existence of a law*,
and in such cases there is no relief in equity. *12 Pet., 32, 55,
66; 6 Johns. Chy., 166; 1 Peters, 1; 10 Pet., 137: 98 U. S., 85.*

Admitting that the mistake was as to a *fact*, equity will not
set aside a conveyance for a mistake of either *law* or *fact*
(where no fraud is shown) unless the parties can be placed *in
statu quo. 7 Paige Chy., 137; Bisp. Eq., 254–5; 3 Otto, 62; 2
John. Chy., 51; Adam's Eq., side p. 191; Story Eq. Jur., sec. 138.*

SMITH, J. The bill, filed by Griffith and wife, was as fol-
lows:

The plaintiffs for their cause of action state: That for
several years prior to the 5th day of March, A. D., 1870, the
said Elizabeth was the owner in her own right and seized in fee
of a tract of land lying partly in and adjacent to the city of
Fort Smith, part of which has been surveyed in blocks and
lots and laid off as an addition to said city, with streets and
alleys, so as to conform to the plat and plan thereof.

That in the year 1868 the citizens of the county of Sebas-
tian aforesaid petitioned the County Court thereof for an elec-
tion to be ordered to remove the county seat of said county
from Greenwood to Fort Smith, and the said court being sat-
isfied that said petition was signed by one-third of the quali-
fied electors, ordered an election under the statute in such case
made and provided, to take place on the 26th day of Decem-
ber, A. D., 1868.

That said election was accordingly held and the County
Court declared on the 12th day of January, 1869, that the
proposition to remove the county seat did not receive a ma-
jority of the qualified electors of said county, and it was there-
fore lost.

But the said County Court afterwards, on the 10th day of January, 1870, declared the order aforesaid null and, void, and also declared that under and by virtue of said election the county seat was removed from Greenwood to Fort Smith, and proceeded to appoint commissioners to select a site upon which to erect a court house within said city of Fort Smith.

That being desirious of enhancing the market value of their unsold town lots and adjacent land, the plaintiffs were induced to offer the lots and parcels of land hereinafter described for a site upon which to build said court house, provided the same should be selected for that purpose.

That the commissioners appointed by said County Court finally selected said lots for the court house; and the plaintiffs on the 5th day of March, A. D., 1870, conveyed to the county of Sebastian, for the nominal consideration of one dollar, which in fact was never paid to them, a block of ground, describing it and exhibiting the deed.

The plaintiffs at the time of making said deed were influenced by the assurance that the county seat of said county had been lawfully removed to Fort Smith, and by the representations of defendant's agents and commissioners, that the defendant would erect upon said land a costly and commodious court house and occupy the same.

The plaintiffs believed if the defendant should erect said buildings and locate thereon the county seat of said county, that they would be fully compensated for said lots in the enhanced value of their other town lots and lands aforesaid. That this was the sole inducement and consideration for said conveyance. That defendant county began the erection of a large court house on said lots and laid the foundation therefor, but proceeded no further because it was held by the Supreme Court of this State that all the orders declaring that the county seat had been removed from Greenwood to Fort Smith, and proceedings subsequent thereto, were null and void.

The plaintiffs further state the county seat was always at Greenwood, and all of the acts of the defendant's court and of the said commissioners were nullities, and the selection of said land for the site of a court house was unauthorized and contrary to law, and defendant acquired no title to said land under said deed. That the county seat of said county has never been located at Fort Smith and the defendant has never had lawful power or authority to erect and occupy a court house upon said lots, and said county has no right or power to acquire and hold real estate except for purposes expressly authorized by law and necessary for carrying on its business, and the conveyance aforesaid from these plaintiffs passed no title to the defendant county.

That said lots have never been nor ever can be used for the site of a court house for said defendant, under the Constitution of the State of Arkansas; for by said Constitution, adopted in 1874, the defendant county is permanently divided into two districts, each exercising all the powers, privileges and immunities of separate and distinct counties.

That the said conveyance by the plaintiffs to the defendant is null and void because the plaintiffs were induced to execute the same by the false and fraudulent representations of defendant and her agents and officers upon which they relied; because it was well understood that the sole purpose for which said conveyance was made was for a site upon which to erect a court house for the defendant county, which the defendant could not then or at any subsequent time lawfully do.

And they further allege that said deed is a nullity because the defendant had no power under the Constitution and laws of the State of Arkansas to accept said deed, or to acquire title to real estate except as before stated.

The plaintiffs say that they have frequently asked the defendant to surrender said property to them and to reconvey the same as in equity and good conscience ought to be done,.

and the defendant, through her officers, has refused to accede to such reasonable request.

That B. J. H. Gaines, as Judge of the County Court of said county, has advertised said property for sale at public auction on first Monday in September, 1885, and has said property in his possession, claiming to hold and dispose of the same for the use and benefit of said county of Sebastian.

That the acts and conduct of said defendant, B. J. H. Gaines, in claiming said property, and attempting to sell the same as aforesaid, tend to the manifest injury of the plaintiff.

That under the act of February 27, 1879, all laws declaring counties to be corporations, and authorizing them to be sued were repealed, and said defendant, Gaines, as Judge of the County Court of said defendant, and as its agent, is intermeddling with said property, claiming to hold the same and the right to dispose thereof as aforesaid under said deed, and by no other right or authority, he claiming the said deed conveyed to said defendant county a good and valid title.

And if, under the provisions of the act aforesaid, the defendant cannot be sued in this action in this court, then the plaintiff is entirely without remedy, because there is no County Court of Sebastian county which has jurisdiction to act in these premises as contemplated by said act.

Whereupon the plaintiffs pray judgment:

1. That said deed of conveyance from plaintiffs to the defendant be declared null and void, and the same be cancelled, and the title to said property be declared to be in the plaintiffs, Elizabeth P., the same as if no such deed had ever been executed.

2. That the defendant, her agents, attorneys and officers be forever enjoined and restrained from selling or attempting to sell, or in any wise interfering with said property, and that

they have such other relief as they are entitled to in the premises.

The defendants demurred for the following causes:

1.  Because the court has no jurisdiction of the persons of the defendants, or either of them, or the subject matter of the action.

2.  Because the complaint does not state facts sufficient to constitute a cause of action.

3.  Because under the laws of this State, no authority is conferred whereby a county may sue or be sued as such.

The court sustained the second ground of demurrer and dismissed the bill.

The act of February 27, 1879, expressly repealed all laws declaring counties to be corporations and prohibited suits against them elsewhere than in the County Court. As, however, the County Court has no equity jurisdiction, the act cannot apply to causes of action like this, which had already accrued; for this would deprive the parties of all remedy.

<div style="float:right">1. COUNTIES: Act prohibiting suits against.</div>

This being in effect a suit for the recovery of lands, Mrs. Griffith is not barred by the statute of limitations, because she has all the time been a married woman. *Hershy v. Latham, 42 Ark., 305.*

The allegations of fraudulent representations by the agents and officers of the county may be safely dismissed. The county acted in good faith, as is manifested by its proceeding to erect the court house on the donated site, until it was decided in *Patterson v. Temple, 27 Ark., 202,* that the county seat still remained at Greenwood. The conveyance was made under a misapprehension, common to both parties, that Fort Smith was now the county seat. Mrs. Griffith has parted with her property without receiving any equivalent, and without the possibility of receiving any. Her object was to enhance the value of her adjacent lands by securing the location of the

public buildings of the county on this block.  This object, without any fault imputable to either of the parties, was then and has ever since remained impossible of accomplishment. The deed was founded on the assumption that the county seat had been removed to Fort Smith.  The result is the same as if the deed had been expressly conditioned on the existence of the supposed state of facts.  The deed is thus nullified in its inception, by the non-existence of a material fact, which constituted at once its inducement and the basis of their negotiations.  The mistake was such as to exclude real consent, and so the minds of the parties never met.  *Wald's Pollock on Contracts, 2d Am. ed., 405, 412, 441; Bishop on Contracts, enlarged edition, secs. 70, 587, 693, 698; Kerr on Fraud and Mistake, Amer. ed., 416; Cooper v. Phibbs, L. R., 2 H. L., 149; Hitchcock v. Giddings, 4 Price, 135; Irick v. Fulton's Exrs., 3 Gratt., 193; Ketchum v. Catlin, 21 Vt., 191.*

But it is contended that the mistake was a mistake of law, involving the construction of an act of the legislature, which had undertaken to make valid the election under which the removal had been had, and the validity of certain orders of the County Court, declaring the result and effect of that election.

In *Smith's Principles of Equity, 180,* it is said :  "It is quite conceivable that the two parties to an agreement may both be laboring under a false impression as to a matter of law, the effect of which would be to make the agreement something entirely different from that which they intended.  In such a case there is indeed no contract at all, the mutual agreement being different in substance from that which legally springs from their acts.  It can scarcely be supposed that the law would in these circumstances enforce an agreement which was in truth never made by the parties at all.  The question here is not whether a mistake of law will avoid a contract, but whether there ever was a contract."

But we do not regard the location of a county seat of a

county as a question of law.    At least there is such a blending or combination of law and fact as to take it out of the rule denying relief against legal mistakes.    A fact is not less a fact though it be the offspring of the law. *Bishop on Contracts, sec. 465*.    Thus, in *Craig v. Grant, 6 Mich., 447*, the organization of a certain county, which depended on the result of a popular election, was held, even in a collateral proceeding, to be a question of fact.    So, also, in *Indianapolis v. McAvoy, 86 Ind., 587*, where the question was, whether certain lots were within the limits of a city, and this turned upon the validity or invalidity of an ordinance proposing to annex them.    In *Gibson v. Pelkie, 37 Mich., 380*, a contract had been made for the collection of a supposed judgment, which proved to be so defective as to be void.    The judgment was of course a matter of record; yet the court decided that there was no subject matter upon which the contract could operate.

Again, in *Heacock v. Fly, 14 Penn. St., 540*, a conveyance was made to a trustee for the sole and separate use of a married woman, and she executed a bond and mortgage for the purchase money.    As the bond and mortgage were void at law, a court of equity rescinded the agreement.    Here the conveyance was founded in a mistake of law, as to the capacity of a married woman to bind herself.    So, in *Gross v. Leber, 47 Penn. St., 520*, a *femme sole*, as guardian, had trust funds in possession and afterwards conveyed her real estate to a trustee to manage for her use and benefit, paying over to her the net proceeds.    The trustee, after accepting the conveyance, died, and his sons, the administrators, in mistake of their duty as such, executed their bond to the ward for the amount due him by his guardian.    The bond was relieved against in equity.    Compare also *Miles v. Stevens, 3 Penn. St., 21*.

In *King v. Doolittle, 1 Head, 77*, the plaintiffs had made their promissory notes for the purchase of a banking institution.    The bank charter contained the reservation of a right

3

to repeal it at the pleasure of the legislature. Both vendors and purchasers were ignorant of this provision; but the power was exercised a few months after the sale. It was decided that the plaintiffs were entitled to rescission, the mutual mistake going to the essence of the contract. In *Harrell v. De Normandie, 26 Tex., 120,* upon a sale and transfer of government securities, the parties contracted on the basis of a certain percentage to be discounted from the estimated value of the securities. But in estimating their value, the seller by mistake omitted to include interest that had already accrued, and the buyer took the seller's estimate. This was held to be such a case of mutual error and surprise as was relievable in equity.

2. EQUITABLE RELIEF: Against deed founded on mistake.

These cases suffice to show that a court of equity will relieve against a mistake of fact, superinduced by a mistake of law. And they are in line with *State v. Paup, 13 Ark., 129.* The circumstances of that case were that Congress had granted to Arkansas two townships of land for the use of a seminary of learning, to be located in tracts of not less than an entire section. In 1840, a few sections of this grant remaining still unlocated, the Legislature authorized the Governor to sell and dispose of the same, in legal subdivisions of not less than one-half quarter section, to be selected and located by the purchasers. The Governor so advertised, and Paup purchased the right to locate 520 acres, for which he made his bonds. Paup selected his lands in unconnected tracts of eighty acres, but the general land office refused to confirm his locations. Being sued upon the bonds, Paup obtained a perpetual injunction of the proceedings upon the ground that the contract, when entered into, was intended to effect a particular object, which, owing to a misapprehension of the law, had failed. In that case Mr. Justice WALKER appears to recognize a distinction between mistake of the existence of a law and mistake of its legal effect. We think this savors of hair-splitting; but we approve the decision on its merits. Paup in reality took nothing by his pur-

chase, and the State had lost nothing. The land could not be located in tracts smaller than 640 acres, contrary to the supposition of the parties. The State, having no right itself to select the grant in detached parcels, could not, of course, give its vendee that privilege. Hence there was no consideration for Paup's bonds; and the parties could be placed in *statu quo*.

In *Allen v. Hammond, 11 Pet., 71*, the Supreme Court of the United States uses this language, which is applicable to the case in judgment:

"The contract was entered into through the mistake of both parties. It imposes great hardship and !injustice on the appellee, and it is without consideration. These grounds, either of which in ordinary cases is held sufficient for relief in equity, unite in favor of the appellee."

*Rogers v. Sebastian County, 21 Ark., 440*, has been thought to be decisive of the present case, but it is clearly distinguishable. The facts in that case were that, in the year 1852, the county seat had been lawfully removed to Fort Smith, and the County Commissioners had selected a site for the court house. Rogers, the owner, thereupon conveyed the land to the Commissioners for a nominal consideration by a deed absolute, the statute forbidding any conditions or reservations in a conveyance for the use of a county. It was expected that Fort Smith would be the permanent county seat, and the county proceeded to build a court house. But three years later, and before the court house was finished, the county seat was re-. located at a distance of eighteen miles from Fort Smith. Rogers now sought a cancellation of this deed and a reinvestment of the title in himself; but relief was denied. But the county seat was actually at Fort Smith when the donation was made; there was no misapprehension going to the root of the matter. The county was not of course bound to maintain its county seat at one place. The parties must have known

Griffith v. Sebastian County.

it was liable to removal; and that upon removal there could be no reverter or resulting trust in favor of the donor.

In this aspect the case was similar to *Gilmore v. Hayworth, 26 Tex., 89.* But here there has been a total failure of the purposes of the conveyance. The parties have dealt with each other under an illusion. The county had no general power to acquire and hold real estate, as for speculation or profit, but only for purposes germane to the object of its creation. *Dillon's Municipal Corporations, sec. 563; Hayward v. Davidson, 41 Ind., 215.*

One obstacle in the way of granting relief in this class of cases is the difficulty, and sometimes the impossibility, of restoring the parties to their original situation. That obstacle is not insurmountable in the present case. If the county has expended money in making improvements, compensation may be allowed therefor. *1 Perry on Trusts, sec. 165a.* And if the land has escaped taxation by reason of the legal title being in the county, it may be placed on the tax books and assessed for past years.

If the allegations of the bill are true, the county has, under a mistake common to it and Mrs. Griffith, obtained an advantage which it is unconscientious to retain.

The decree is reversed and the cause remanded, with directions to overrule the demurrer and require the defendants to answer.