## SCHUMAN *v.* GEORGE.

### Opinion delivered December 15, 1913.

1. COUNTY SEAT—ELECTION TO DETERMINE—JURISDICTION OF COUNTY
   COURT.—The county court has exclusive original jurisdiction to
   determine the result of an election held to decide the removal of
   a county seat. (Page 492.)

2. COUNTY SEAT—ORDER OF COUNTY COURT—VALIDITY.—The order of the
   county court following an election establishing the county seat at
   a certain place is a valid order, although subject to appeal and
   reversal, if erroneous. (Page 492.)

3. DEEDS—CANCELLATION—MISTAKE.—Where appellant, knowing that a
   contest over the location of the county seat was pending, conveyed
   certain property to the county to be used for courthouse purposes,
   and the county seat was finally located elsewhere, it will be held
   that the deed to the county was not executed under a mistake, and
   the deed will not be canceled. (Page 494.)

Appeal from Little River Chancery Court; *James D. Shaver,* Chancellor; affirmed.

#### STATEMENT BY THE COURT.

In 1898, Eliza Schuman was the owner in fee simple of eighty acres of land, on which is now situated the town of Rocky Comfort. The railroad station and post-office are called "Foreman." The land was situated in Little River County; and in 1898, Eliza Schuman laid it off into lots and blocks for townsite purposes. The west half of block 30 was dedicated to the public. The dedication was made by a deed which was duly acknowledged and is as follows:

"Know all men by these presents: That we, Carl Schuman and Eliza Schuman, his wife, owners of the west half of the southeast quarter of section 5, township 12 south, range 32 west, have caused the same to be subdivided in a manner as shown on this plat, and all streets and alleys and the west half of block No. 30, are hereby dedicated to the public."

At its October term, 1901, the county court of Little River County made an order, submitting to the voters of the county the proposition to vote on a re-location of the county seat, and the towns of Ashdown and of Rocky

Comfort were named in said order as two places to be voted for, in addition to the other issues submitted to the voters of Little River County, viz: For removal or against removal from its existing location, at that time at Richmond. Said election was ordered to be held on December 3, 1901, and was duly held at that time. The votes cast in said election were duly canvassed and returned to the county court, and, on November 4, 1902, the county court made an order declaring that the town of Rocky Comfort had received the highest number of votes and had become the county seat of Little River County, and commissioners were appointed and ordered to remove the records and all the property pertaining to the county seat to the town of Rocky Comfort. The commissioners complied with the order, and Rocky Comfort became, and was treated as, the county seat until December 3, 1904. An appeal was taken from the order of the county court adjudging Rocky Comfort to be the county seat, and, at the October term, 1903, of the circuit court, it was determined that Ashdown had received the highest and greatest number of votes in said election and thereby became the county seat of Little River County; and it was ordered that the records and all property of the county be removed to Ashdown and that Ashdown be the permanent county seat of Little River County. On appeal to the Supreme Court, the judgment of the circuit court was affirmed on the 3d day of December, 1904. See *Schuman et al.* v. *Sanderson et al.,* 73 Ark. 187. Immediately thereafter, the records and all county property were removed to Ashdown, and Ashdown has remained the county seat of Little River County ever since that time.

On the 16th day of February, 1903, the Little River Chancery Court, in a suit instituted by the courthouse commissioners against Carl Schuman and Eliza Schuman, entered a decree, in which it found that the west half of block No. 30 of the town of Rocky Comfort was dedicated to the public by mistake of the draftsman, and that the donor, Eliza Schuman, intended to convey the

same to the county of Little River for courthouse purposes. The dedication to the public was annulled and set aside, and the decree of the court provided that Eliza Schuman should, within thirty days, make and execute to the county of Little River a deed to said property. On the 18th day of February, 1903, Eliza Schuman, by warranty deed in common form, conveyed said property to the county of Little River. The consideration recited in the deed was one dollar. Thereafter, the county took possession of said property, and has held possession of it ever since.

On the 24th day of October, 1911, Carl Schuman and Eliza Schuman instituted an action in the chancery court against the town of Rocky Comfort and certain taxpayers of said town, who are alleged to represent the public. The defendants failed to answer, but made default. On the 15th day of June, 1912, the chancery court found that the sole consideration for the conveyance of the west half of block No. 30 in the town of Rocky Comfort to the public was that said plot of ground be used for the purpose of erecting a courthouse thereon, and that said consideration was so mutually understood by and between the plaintiffs and the incorporated town of Rocky Comfort, and the entire public of said town. A decree was entered quieting the title to said property in the plaintiffs, and it was further decreed "that all the rights of the defendants are forever barred, with respect to said property, and that all the title and interest of said defendants is hereby decreed in the plaintiffs."

On the 13th day of September, 1912, N. A. George, county judge of Little River County, made an order for the sale of said property, reciting in said order that it would be to the best interests of the county to sell the same at public auction, and Seth C. Reynolds was appointed commissioner to make the sale. The property was duly advertised and offered for sale, pursuant to said order, on the 14th day of October, 1912, at which sale J. H. Ellis purchased two of the lots. The remaining lots were bid in by various parties; but the county

court, at its January term, 1913, disapproved of the sale of all the lots except the two that were struck off to J. H. Ellis, and as to these two lots the county court approved the sale and ordered said commissioner to make a deed to J. H. Ellis for the same when the purchase price was paid.

On the 15th day of March, 1913, Carl and Eliza Schuman instituted this action in the chancery court against the defendant, N. A. George, as county judge, Seth C. Reynolds, as commissioner, and J. H. Ellis. The facts above set forth were stated in the complaint. The object and purpose of the bill was to restrain the commissioner from making a deed to J. H. Ellis, to set aside all orders made by the county judge in reference to said property, and to declare the conveyance by plaintiffs to Little River County null and void, and to quiet the title of the plaintiffs to said property.

The evidence on the part of plaintiffs shows that the one dollar consideration recited in the deed of February 18, 1903, from Eliza Schuman to Little River County, was never paid, and was not intended to be paid, and that the sole consideration for the deed was that the courthouse should be erected on the ground embraced in the deed.

Carl Schuman testified that he was agent for his wife in the transaction, and that if she had known at the time the deed was executed to the county that the county was not in a condition to build a courthouse on the property, and could not legally do so, she would not have executed the deed. He said that both he and his wife knew at the time the deed was executed that there was a contest pending over the result of the election for the county seat, and said that the deed was given for no other consideration except that it be used as a site for the erection of a courthouse and jail. He was asked this question: "Did Mrs. Schuman then make the deed on condition that the county seat would be located at Rocky Comfort and it would be used as a county site

for the erection of a courthouse and jail?" Answer: "Yes, sir; she did."

The county erected a jail on the property, and used it while the county seat was at Rocky Comfort, but a courthouse was never erected on said property. A temporary location for it was secured elsewhere in the town, pending the contest.

The chancellor found that neither of the plaintiffs had any interest whatever in the west half of block 30 in the town of Rocky Comfort, and it was decreed that the complaint of plaintiffs be dismissed for want of equity. The plaintiffs have duly prosecuted an appeal to this court. Additional facts will be referred to in the opinion.

*A. H. Scott* and *J. W. & J. W. House, Jr.,* for appellants.

1. The town or public was not made a party to the proceedings resulting in the decree of February 16, 1903, and it was not affected by the decree at all. That decree did not divest title from appellants and vest same in the county.

If the county acquired any title under section 734, Kirby's Digest, it did not begin to run until the decree of June 15, 1912, because plaintiffs had not title before that time. Section 734, however, applies only to voluntary sales of the person to be bound. 44 Ark. 458.

2. If the title did vest in the county, the consideration for the transfer may be inquired into. The consideration mentioned in the deed is only *prima facie* evidence of the real consideration, and parol evidence may be admitted to prove the real consideration. 49 Ark. 24; 75 Ark. 89; 82 Ark. 492; 86 Ark. 315; 90 Ark. 492.

3. There was a failure of consideration for the deed. *Griffith* v. *Sebastian County,* 49 Ark. 24, is analogous to this case, and the principles there announced should control here. See also Dillon, Mun. Corp. 1106; 59 Fed. 96; 3 Mich. 11; 113 Mo. 257; 1 O. St. 478.

*James S. Steel, J. S. Lake* and *James D. Head,* for appellees.

1. Where a cash consideration is named in a deed, oral proof is not admissible to show that nothing was paid so as to defeat the grant for failure of consideration. 71 Ark. 494. If Schuman's contention that the property was, in the first instance, by mistake of the draftsman, dedicated to the public, is correct, then the public merely held the bare legal title while the equitable title remained in appellants, and even though the dedication was made, the decree of the chancery court annulled it. Appellants were parties to that suit. They are in no position to assert that the decree is not good as against the public, for it is good as against them.

The title Schuman obtained by the proceedings in chancery against the public, if any, inured, under the deed, to the county.

The Griffith case, relied on by appellants, is different from this on the facts and is not controlling; but this case does come within the principles announced in *Rogers* v. *Sebastian County,* 21 Ark. 440.

2. The deed was necessarily absolute. The attempt of appellants to show a condition or reversion is an effort to engraft a trust upon a deed absolute in form, contrary to the statute. Kirby's Dig., § 1122; 21 Ark. 440; 73 Ark. 211; 71 Ark. 494; 13 Cyc. 683.

HART, J., (after stating the facts). It is first contended by counsel for appellants that the case of *Griffith* v. *Sebastian County,* 49 Ark. 24, is decisive of the present case. There, Griffith conveyed to Sebastian County, for the nominal consideration of one dollar, lots in Fort Smith, to be used as a site for the courthouse. The conveyance was made under a misapprehension common to both parties that Fort Smith had become the county seat, and the anticipated enhancement in value of adjacent lands belonging to Griffith was the real consideration for the deed. It was afterward decided that the county seat had not been removed to Fort Smith, but remained at Greenwood. Griffith filed a bill

to cancel the deed. The court held that the deed was founded on an assumption as to the removal of the county seat which was a mutual mistake of the parties, against which Griffith was entitled to relief in equity. Here, as in the Griffith case, the real consideration for the deed was the anticipated enhancement in value of adjacent property belonging to Mrs. Schuman, but the other facts are essentially different. In the Griffith case, the order of the county court establishing the courthouse at Fort Smith was absolutely void, and, on that account, the court held there was a mutual mistake which entitled the donor of the ground for county seat purposes to relief in equity, and the deed was ordered cancelled.

The county court has exclusive original jurisdiction to determine the result of an election held to decide the removal of a county seat. *Russell* v. *Jacoway*, 33 Ark. 191. Hence, it will be seen that the order of the county court establishing the county seat in the present case at the town of Rocky Comfort was not a void order, but was a valid one. Of course, it was subject to review on appeal, and, if erroneous, would be reversed or set aside. Carl Schuman, who acted as agent for his wife, knew that a contest was pending when his wife executed the deed to the county. Section 1122 of Kirby's Digest provides that before the county court shall make any order carrying into effect the will of the majority voting for the removal of the county seat, the vendor or donor of the new location shall make, or cause to be made, and deliver to the county judge, a good and sufficient deed, conveying to the county the land or location so sold or donated, in fee simple, without reservation or condition. This statute was in force when Mrs. Schuman executed the deed to the county.

In the case of *Rogers* v. *Sebastian County*, 21 Ark. 440, the court, in construing this statute, held that the commissioners had no power to receive any donation of land for a courthouse site with a reservation or limitation expressed in the deed, and that this the donor knew, or

was obliged to know, it being the public law. As above stated, Schuman knew, when the deed was executed by his wife to the county, that there was a contest pending over the result of the election for the removal of the county seat and that the decision of the county court locating it at the town of Rocky Comfort was subject to be reversed on appeal. The county court was within its jurisdiction in making the decision, and the order of the court establishing the county seat at Rocky Comfort was valid and made Rocky Comfort the county seat, unless the order was reversed on appeal. Therefore, we hold that the deed was not executed under a mistake of fact. Neither do we think that the case of *Gaskin* v. *Williams,* 35 L. R. A. (N. S.) (Mo.) 603, is authority for the position assumed by counsel for appellants. There, the dedication was made under a statute which provides that a duly acknowledged, certified and recorded plat shall vest the fee of such parcels of land as are therein named, described or intended for public use in such city, town or village, when incorporated, in trust for the uses therein named, expressed or intended, and for no other use or purpose. According to the designation in the plat in that case, the block was dedicated to the county for courthouse purposes, and it was so expressed on the face of the plat. The court said that the statute referred to had been construed by the court to limit the use to the use expressed in the dedication. The court, therefore, held that under the statute the county held the block for courthouse purposes, and for no other purpose. Thereafter, and before the courthouse was erected on the property, the county seat was located at another place, and the Supreme Court of Missouri held that, as a practical proposition, the execution of the trust had become impossible, and that in as much as there was no absolute ownership in the county, and as it had become impossible for the county to execute the trust by using the block for courthouse purposes, the land reverted to the heirs of the original donor. As we have already seen, our statute is entirely different. It provides that

the donor of the new location shall make and deliver to the county judge a good and sufficient deed, conveying to the county the land or location so donated, in fee simple, without reservation or condition. The deed required to be executed under this statute being an absolute deed, there can be no reversion to the grantor, and it could only be cancelled as was done in the Griffith case, for mutual mistake of the parties. Here, as we have already seen, there was no mutual mistake of the parties, and Schuman stated, in response to a direct question asked by his counsel, that the deed was made on condition that the county seat would be located at Rocky Comfort. Under the rule announced in the case of *Rogers* v. *Sebastian County, supra,* this condition was void, even if written in the deed, and the court there held that no such condition could be attached by parol agreement.

It follows that the chancellor was right in holding that neither of the plaintiffs had any interest whatever in the property in controversy. It will be noted that in 1898 the property, by deed, was dedicated to the public, and the record shows that the dedication was impliedly accepted. A town was platted, and lots were sold on the faith of this dedication, and we do not attempt to decide as to the rights of parties who have purchased lots adjacent to the property in question, for these parties are not before the court. It is certain that the decree of the chancery court of February 16, 1903, did not affect the rights of any of these parties, because the only parties to that suit were the plaintiffs in this action and the courthouse commissioners. The public was not represented at all. The suit was instituted by the courthouse commissioners against Carl and Eliza Schuman, and the decree was rendered upon the pleadings, without any proof being taken, and the decree could not affect the rights of any one not a party to the suit. It will be noted that the dedication to the public was made before the election for a relocation of the county seat was ordered. Hence, it may be said that that decree was of no effect whatever, and that the deed made by plaintiffs to

the county on the 18th day of February, 1903, was the voluntary act of the plaintiffs. If they subsequently reacquired title to the property by the decree of June 15, 1912, referred to in the statement of facts, then their title inured to the benefit of the county. *Horsely* v. *Hilburn*, 44 Ark. 458. If that decree did not reinvest title in the plaintiffs (a question which we do not decide because it is not put in issue in this case), then the title remains in the public, and the plaintiffs have no title to the property in question. Therefore, the decree of the chancellor dismissing the plaintiff's complaint for want of equity was correct, and it will be affirmed.