## JOSEPH HARRELL v. W. P. DE NORMANDIE AND ANOTHER.

In a sale and transfer of government securities, the parties contracted on the basis of a certain per centage, to be discounted from the estimated value of the securities; but in estimating their value the seller by mistake omitted to include the interest accrued upon the securities, and the buyer relied upon the seller's estimate as represented to him: *Held*, to be such a case of mutual error, mistake and surprise, as is appropriately and ordinarily relievable in a court of equity.

A contract thus made in mutual error is wanting in one of the essential elements of a contract; and the effect of correcting the error is not to defeat, but to effectuate, the intention of the parties.

See this case for circumstances held to constitute mistake of fact, though in some respects closely resembling error or ignorance of law.

APPEAL from Williamson. Tried below before the Hon. E. H. Vontress.

The appellant, Harrell, being in March, 1856, the owner of two certificates of the public debt of Texas, upon which there was due from the United States for principal and interest about $1,500, procured De Normandie as his agent to negotiate a sale of them to Swenson. But, in ignorance of the fact that the certificates belonged to a class of claims upon which interest was payable, Harrell estimated them to De Normandie at $832 77, the amount of the principal alone, and authorized De Normandie to ascertain what Swenson would give for them. De Normandie represented the value of the certificates to Swenson at the sum estimated by Harrell, (about $833,) and Swenson offered to give $820 for them, equivalent to about one and a half per cent discount, at which rate Swenson had been in the habit of buying securities of this character. Harrell accepted the offer, and Swenson sent the money to close the transaction by De Normandie, and at the same time agreed to allow the latter one-third of the profits if he would make out the transfers, which he accordingly did. The sale being consummated through De Normandie, the intermediary, and the certificates being through him delivered to Swenson, the latter at once detected Harrell's mistake in the estimate of the value, up to which time all the parties had been in ignorance of the true value of the certificates. This discovery was not communicated to Harrell by either of the other parties. But Swenson soon after received from the United States payment of the true amount of the principal and interest of the certificates, being nearly $1,500; and this fact came to the knowledge of Harrell, who was thus apprised of the mistake in the estimate upon which the sale was made, and thereupon demanded of Swenson the difference which he claimed to be due him on account of the error. After some negotiations, the parties failed to effect a settlement, and this suit was instituted by Harrell on the 11th of November, 1856, in the District Court of Travis county, against De Normandie and Swenson, for the purpose of recovering from them the difference claimed by the plaintiff, who in his petition charged the defendants with fraud and collusion in the sale of the securities.

The defendants demurred, assigning, among other causes, that

the value of the certificates being fixed by law, the plaintiff was chargeable with knowledge of it, and could not be heard to pretend ignorance. They also answered, admitting the sale and purchase, and insisting on its validity, but not denying the mistake with regard to the true value of the securities. They insisted, however, that Harrell had sold and Swenson had bought them for the specified sum of $820; denied all fraud and collusion, or suppression of truth or of knowledge which they were bound in law or conscience to communicate. The demurrer was overruled, and the cause was submitted to a jury at the January term, 1858, of the Travis District Court, and a mis-trial had, when the venue was changed to Williamson county. At the Spring term of the Williamson court, a jury was waived, and a judgment was rendered by the court in favor of the defendants; and a new trial being refused, the plaintiff appealed.

*G. W. Flournoy* and *W. L. & C. L. Robards*, for appellant.—" Mistake is some unintentional act or omission or error arising from ignorance, surprise, imposition or misplaced confidence." (Story's Eq. Jur., sec. 110.) Tested by the above rule, there is no doubt Harrell made the sale under a *mistake*, and is therefore entitled to relief.

But it is insisted by counsel for the appellees that it was a *mistake of law*, and therefore not entitled to relief; and they invoke the maxim, "*Ignorantia legis neminem excusat.*" We find many exceptions to this rule. (Landsdown v. Landsdown, 3 Moseley R., quoted in 1st Story's Eq. Jur., sec. 125; Bingham v. Bingham, Id., sec. 124; Dunage v. White, 1 Swanton R., 137.) (Counsel also cited 2nd Pothier on Obligations, 313; Id., Appendix, 347, 372; 4th Mass. R., 342; 7 Id., 488; Stone v. Brown, 16 Tex. R., 430; 8 Wheaton R., 174; Cannon v. Hemphill, 7 Tex. R., 198; 4 Mumford, 6.)

Upon a careful analysis of the cases, it will be found that relief has been *only* refused in cases where some other circumstances, considerations or equities, entered into and were connected with the transaction, moving the court to refuse relief. (1 Vesey & Beame R., 23; 1 Vesey R., 19; 1 Story Eq. Jur., 123, and

cases there cited and in note to sec. 112; 1 P. Williams R., 723; 1 Peters S. C. R., 16 and 17; 6 Johns. Ch. R., 166; 2 Pothier Ob., 322; 1 Story Eq. Jur., sec. 139.)

The strongest case that we have been able to find in favor of the rule is, The Bank of the United States v. Daniel, 12 Peters R., 32, 55, 56. The court subjected this case to the most stringent test, for it says : " Testing the case by the principle that a mistake or ignorance of the law forms no ground of relief from contracts *fairly* entered into with a full knowledge of the facts, and under circumstances repelling all presumptions of fraud, imposition, or undue advantage having been taken of the party, none of which are chargeable upon the appellants in this case, the question then is, were the complainants entitled to relief, to which we respond decidedly in the negative." The same test was applied in the case of Lyons v. Richmond, 2 Johns. Ch. R., 52.

We are willing to submit our case to this test. Then the question arises, 1st, was the contract *fairly* entered into? Had Harrell a full knowledge of all the facts? Was the contract made under circumstances repelling all presumption of fraud, imposition or undue advantage? (Bright's Heirs v. Tobin, 7 Monroe Ky. R., 617 ; Coles v. Trecothick, 9 Vesey, Jr. R., 245; 10 Ves. Jr., 218; Briscoe v. Bronaugh, 1 Tex. R., 326; 7 Watts R., 472; 1 Hoveden on Frauds, 145; 9 Tex. R., 598; 17 Tex., 661; 7 Russell & Mylne R., 54; 6 Pick. R., 197; 5 Paige R., 650; 5 Sanford Ch. R., 572; 1 Hoveden on Frauds, 152.)

We have granted for arguments sake that it was a mistake of law, but we contend that it was a mistake of fact. If this be conceded, then all difficulty is removed. The rule in mistakes of . fact is, " an act done or a contract made under a mistake or ignorance of a material fact is voidable and relievable in a court of equity." (1 Story Eq. Jur., sec. 140 ; 1 P. Williams R., 408; 9 Pick. R., 129.)

*I. A. & G. W. Paschal*, for appellees.—The plaintiff has argued the case from first to last as though there was a question of fraud involved. But there is none, since the proof shows that, at the time of the consummation of the trade, the agreement to sell,

payment which preceded the delivery, and the delivery itself, all parties were alike ignorant of the value of the thing sold. Neither Swenson nor De Normandie were even, in fact, advised of the value of the security, until the assignments were produced.

The true question, therefore, is, was the transaction such an one as the law will reform? Was there a legal or equitable obligation upon the part of Swenson to rescind the trade, to return the certificates and demand back his money? And upon his failure to do this, has Harrell a legal right to the profits of the speculation?

That upon the payment of the money the minds of the parties had met; that the certificates became the property of Swenson, and the money Harrell's, there can be no doubt. The delivery of the assignments and release was simply necessary to the collection of the money.

We take it that it is an incontrovertible principle, and it was so decided at the last term of this court in the case from Washington, that when the sources of information were equally open to both parties, each trades at his own peril and cannot complain if by proper diligence he might have enlightened himself. (Greenleaf v. Queen, 1 Peters R., 147; Bilbis v. Lumby, 2 East R., 469; same case, new edition, book 1, 547; Lowrie v. Bouchier, Doug., 467; Lyon & Brockway v. Richmond, 2 Johns. Ch. R., 51; 1 Johns. Ch. R., 512; 1 Peters R., 15.)

In the case of The Bank of The United States v. Daniel, 12 Peters R., 27, the subject was well considered and the rule in Hunt v. Roumaniere re-affirmed; and the court repeated that, "whatever may be the exceptions to the rule, they will be found few in number, and to have something peculiar in their character, and to involve other elements of decision." In the case of Daniel it was held, that where a party had paid ten per centum damages upon a bill of exchange, all the parties being mutually mistaken in supposing that the statute of Kentucky gave those damages upon a dishonored bill, equity would grant no relief. (Trigg v. Reed, 5 Humphries, 535.)

WHEELER, C. J. That the plaintiff committed a mistake in

estimating the value of his certificates sufficiently appears by the evidence. He estimated them at the value of about eight hundred and thirty three dollars, when their true value was about fifteen hundred dollars. And there is little doubt that the mistake arose from basing his estimate on the principal only, omitting in the calculation the interest due upon the certificates. How he came to make so important an omission—whether from oversight and inadvertence in fact, or from ignorance of his right to include the interest, does not appear. But that the error did occur in his calculation, causing a mistake to his disadvantage of about six hundred and sixty seven dollars, is evident. He supposed the certificates to be actually worth at the department about eight hundred and thirty three dollars, ($832 73.) Having in view this estimate of the value of the certificates, and being advised by De Normandie that he could sell them to Swenson, if he would allow a reasonable discount, he requested the former, who was apprised of their estimated value and also supposed it their true value, to see Swenson, and authorized him to sell them to the latter for eight hundred and twenty dollars; that is, to allow a discount of about thirteen dollars, ($12 73,) or about one and a half per cent. De Normandie did as requested; Swenson accepted the proposition; the trade was closed and the money paid; Swenson at the same time charging De Normandie to see that there was a profit, and instructing him to prepare the writings necessary to effect the transfer of the certificates; for which service he engaged to give him one-third of the profits. The transaction was closed. Swenson had not yet seen the certificates, but trusted to the statement of De Normandie as to their amount or value, and the latter relied on the plaintiff Harrell's statement and estimate. Thus, it is evident, all the parties acted and contracted on the same erroneous basis, estimating the value of the certificates at about eight hundred and thirty three dollars, and contracting upon the basis of giving and receiving reciprocally a certain per cent., about one and a half per cent. discount upon the supposed value, as the equivalent of commissions, or exchange and interest until the money should be realized upon the certificates by the purchaser. All the circumstances attending the negotiation render it quite

evident that this was the basis and substance of the dealing of the parties. Swenson did not know at the time to whom the certificates belonged, and, of course, not knowing that they belonged to Harrell, he did not know that this estimate was Harrell's, but he knew the estimated value by De Normandie, and this was in fact Harrell's estimate. He relied on De Normandie's statement as the latter had on Harrell's, or it is not to be supposed he would have agreed upon the price he would give, and have actually paid the money. De Normandie knew whose certificates they were, and what the owner thought they were worth, and if it were material that the same knowledge be brought home to Swenson, he is chargeable with notice, having made De Normandie his agent in the transaction, on the principle that notice to the agent is notice to the principal.

When the certificates were shown to Swenson, he detected the error. But the contract had been completed; and up to and at the time of its completion, the parties had acted and contracted under a mutual mistake. And we think it free from doubt that it is such a case of mutual error, mistake and surprise as is appropriately and ordinarily a ground of relief in a court of equity.

A certain per cent. discount for the advance of the money was doubtless the basis upon which the parties contracted. By mistake they made an under estimate, both being in error as to the sum upon which it was to be computed, and its correction is but the ordinary case of correcting mutual errors in matters of fact. The effect of correcting the error is not to defeat, but to carry out and effectuate what the parties intended.

It is true, in general, that where a party makes a contract or does an intentional act from ignorance of the law, which otherwise he would not have done, it is nevertheless binding upon him, upon the maxim *ignorantia juris non excusat*. For then the contract or act is what the party intended it should be; and a court of equity will not relieve by substituting something else which was not intended. But that is very different from a case of mutual error or mistake, which defeats the real intention of the contracting parties. A contract thus made in mutual error is wanting in one of the essential elements of a contract. "Contracts made in mu-

tual error, under circumstances material to their character and consequences seem, upon general principles, invalid." (1 Story's Eq. Jur., sec. 134.) The parties here did not intend, the one to sell and the other to buy certificates worth fifteen hundred dollars for eight hundred and twenty dollars. That was not the contract within the intention of the contracting parties. What they did intend was on the part of the seller to submit to a certain discount, for the advance of the money, and on the part of the buyer to make a certain profit on the investment—a discount of thirteen dollars on eight hundred and thirty-three dollars, and a like profit on eight hundred and twenty dollars; and this is the contract which the law will effectuate by correcting the error in the sum on which they based their estimate, according to the truth of the case, and awarding a proportionate discount and profit upon the true value of the certificates. It is our opinion, therefore, that the judgment be reversed, and such judgment be here rendered as the court below ought to have rendered.

Reversed and rendered.