UNITED STATES v. CHARLES et al.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1896.)

No. 681.

CONTRACTS—UNKNOWN CIRCUMSTANCES.

The government advertised for proposals for carrying the mails between T. and V., and one C., having made a bid which was accepted, entered into a contract with the government for carrying the mails between said places. After C. had entered upon the performance of such contract, he discovered that, some time before the advertisement for bids, the post office at V. had been discontinued,—a fact which had been overlooked by the government when advertising for bids,—and that it was necessary to carry the mails destined for that place to Q., a town on the further side of a wide river which flowed between V. and Q., and which must be crossed by a ferry. A demand for additional compensation having been refused, C. abandoned his contract. *Held;* that he was entitled to do so, and incurred thereby no liability. *Held*, further, that a contract will not be enforced when it appears to have been based on the supposed existence of a certain fact which furnished the motive for entering into the agreement, if it subsequently transpires that the assumption on which the contract was based was erroneous.

In Error to the District Court of the United States for the District of Kansas.

This suit was brought by the United States against Grovener C. Charles and against his surety, Frank G. Charles, to recover damages for the nonperformance by the defendant Grovener C. Charles of a contract to carry the mail from Galveston, Tex., to Velasco, Tex. The post-office department advertised in the usual way, on February 1, 1890, for proposals to carry the

mail over certain designated routes, among which was a certain route which appears to have been described in the advertisement as "route Number 50,940, between Galveston and Velasco, Texas." The defendant Grovener C. Charles made a proposal on March 27, 1890, "to carry the mails of the United States from July 1, 1890, to June 30, 1894, on route Number 50,940, between Galveston and Velasco, state of Texas, under the advertisement of the postmaster general dated February 1, 1890, with celerity, certainty, and security, for the sum of eleven hundred and ninety-nine (1,199) dollars per annum." The proposal was duly accepted, and the contract was entered into on the following 28th day of April, 1890. The first clause of the contract was as follows: "This article of contract, made the 28th day of April, 1890, between the United States of America (acting in this behalf by the postmaster general) and Grovener C. Charles, contractor, and Frank G. Charles, of Hutchinson, Kansas, and Thomas T. Taylor, of Hutchinson, Kansas, as sureties. witnesseth that whereas Grovener C. Charles has been accepted, according to law, as contractor for transporting the mail on route No. 50,940, from Galveston, Texas, to Velasco, Texas, and back, six times a week, at a schedule satisfactory to the department, at $1,199 per year for and during the term beginning the first day of July, 1890, and ending June 30, 1894: Now, therefore, the said contractor and his sureties do jointly and severally undertake, covenant, and agree with the United States of America, and do bind themselves, to carry said mail with certainty, celerity, and security. * * *" The balance of the provisions were the usual ones found in like contracts for carrying the mail. The town, or rather village, of Velasco, was situated on the east bank of the Brazos river, near its entrance into the Gulf of Mexico. The river at that point was variously estimated by the witnesses as being from 600 feet to one mile in width. When proposals to carry the mail from Galveston to Velasco, Texas, were invited, as well as when the defendant's bid was made and accepted by the government, and the contract was entered into, there was no post office at Velasco. Tex., but this fact does not appear to have been known to the defendant. A year or more prior to that time the post office at Velasco had been removed to a town on the opposite, or west, bank of the Brazos river, which was known as "Quintana." The defendant began carrying the mail over the route in question about August 8, 1890, and continued to do so until about September 1st of the same year, during which period he transported the mail across the Brazos river, and delivered it at the post office in Quintana, Tex. As soon as he discovered that there was no post office at Velasco, and that the mail must be transported across the river, to be delivered at a post office, he made complaint to the post-office department, and demanded additional compensation for the increased labor and expense. This demand was not complied with by the government, whereupon the defendant abandoned the route. The government sought to hold the defendant responsible for the increased cost of carrying the mail from Galveston, Tex., to Quintana, Tex., over and above the amount bid by the defendant for carrying the same from Galveston to Velasco. At the conclusion of the case the circuit court directed a verdict in favor of the defendant.

W. C. Perry, U. S. Atty.

Samuel R. Peters and John C. Nicholson, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

We think that the instruction given by the circuit court, to return a verdict in favor of the defendant, was properly given. The proposal made by the defendant "to carry the mails * * * between Galveston and Velasco" must be construed as a proposal to carry it between two towns of that name in the state of Texas; and this proposal, when accepted by the government, bound the defendant to

carry the mail between the places named in his proposal, and not between Galveston and Quintana. It cannot be said, on the state of facts disclosed by this record, that the words "Velasco" and "Quintana" were merely two different names for the same place, because it was conclusively shown that there was a well-known settlement or town on the east bank of the Brazos river which went by the name of "Velasco," and another town on the west bank of the same river, about a mile or one-half mile distant, which was known as "Quintana." Besides, it is conceded by the government that the cost of transporting the mail from Galveston to Quintana would not be the same as the cost of transporting it from Galveston to Valesco, because of the increased expense of ferrying across the Brazos river. It is evident, we think, from the testimony, that the designation of Velasco as one of the termini of the route was due to a mistake on the part of the post-office department. The post office had formerly been located at Velasco, and the fact that it had been moved across the river, to Quintana, was overlooked when proposals to carry the mail were invited, and when the defendant's bid was accepted. The contract, when executed, was entered into under a mutual mistake of fact; both parties supposing that there was a post office at Velasco, on the east bank of the river, where the mail could be delivered. In view of the well-known fact that the government does not make a practice of letting mail contracts, or establishing mail routes, except between places where there are post offices, the advertisement for proposals to carry the mail between Galveston and Velasco was tantamount to a representation that there was a post office at Velasco. At all events, the defendant was warranted in assuming, as he appears to have done, that such was the case. Moreover, the advertisement indicates very clearly that it was published, and that proposals were invited, on the assumption that a post office was located at Velasco. When the mistake was discovered, and when the government declined to pay an increased compensation for transporting the mail across the river to Quintana, the defendant, we think, was entitled to abandon the contract, as he appears to have done, and by so doing he incurred no liability. The doctrine is well established that a contract will not be enforced when it appears to have been based on the supposed existence of a certain fact which furnished the motive for entering into the agreement, if it subsequently transpires that the assumption on which the contract was based was erroneous. Courts of equity frequently decree the surrender and cancellation of agreements under such circumstances. Thus in Allen v. Hammond, 11 Pet. 63, it appeared that the parties to the suit had entered into an agreement whereby one was to pay the other a large sum by way of commissions for services to be rendered in inducing the Portuguese government to pay a certain claim for the wrongful seizure of a certain ship and cargo. When the agreement was made the Portuguese government had already determined to pay the cla'm, and had notified the United States to that effect, but this fact was unknown to the contracting parties. Inasmuch as it appeared evident to the court that the agreement

would not have been made if the last-mentioned fact had been known to the contracting parties, it was decreed that the contract in question should be canceled and annulled. See, also, Hitchcock v. Giddings, 4 Price, 135; Scruggs v. Driver's Ex'rs, 31 Ala. 274, 289; Ketchum v. Catlin, 21 Vt. 191; Gibson v. Pelkie, 37 Mich. 380; Rogers v. Walsh, 12 Neb. 28, 10 N. W. 467; Harrell v. De Normandie, 26 Tex. 120; Bish. Cont. § 587. The judgment below was for the right party, and it is hereby affirmed.