## EMMA C. SONNEMANN

*v.*

## ANNA MERTZ *et al.*

*Opinion filed April 17, 1906.*

1. BOUNDARIES—*disputed boundary line may be established by parol.* When a boundary line between adjoining owners is unascertained or in dispute they may establish it by a parol agreement and possession in pursuance of the agreement, and a line so established will be binding on the parties and those in privity with them.

2. SAME—*boundary line agreed on by mistake not binding.* If the intention of adjoining owners is merely to ascertain the true boundary line, and in doing so an erroneous line is agreed upon by accident or mistake, such as measuring with an incorrect chain, the agreement is not binding, and the line will not be established merely because of the agreement.

3. EJECTMENT—*the plaintiff is entitled to recover unless prima facie case is overcome.* A plaintiff in ejectment who proves title to a tract of land, including the portion in dispute, is entitled to recover unless defendants overcome the *prima facie* case so proved.

4. SAME—*law does not presume that possession of defendants is rightful.* In ejectment the law does not presume that the defendants are rightfully in possession of the land, and if they rely upon a parol agreement establishing a different boundary line from the true one it is for them to prove it.

5. INSTRUCTIONS—*it is error in a civil case to require party to furnish evidence to satisfy jury.* It is error to instruct the jury in a civil case that the party having the burden of proof must furnish evidence to "satisfy" the jury.

6. STATUTE OF FRAUDS—*heirs and privies of parties to a parol agreement may plead the statute.* An instruction in an action in ejectment is erroneous which excludes heirs and privies of the parties to a parol agreement from taking advantage of the Statute of Frauds.

WRIT OF ERROR to the Circuit Court of Fayette county; the Hon. TRUMAN E. AMES, Judge, presiding.

ALBERT & ROE, for plaintiff in error.

BROWN, BURNSIDE & BULLINGTON, for defendants in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error brought suit in ejectment in the circuit court of Fayette county against defendants in error for the possession of the north-west quarter of the north-east quarter of section 19, town 6, range 2, in said county, and by her declaration claimed title in fee. The defendants disclaimed as to all of said tract except the part lying west of a rail fence running in a north and south direction near the division line between that tract and the land west of it, and pleaded not guilty of unlawfully withholding said part west of the rail fence. There was a trial by jury, resulting in a verdict finding the defendants not guilty. The court, after overruling motions for a new trial and in arrest of judgment, entered judgment on the verdict, and the record is brought here by writ of error.

Jackson Dewald was the common source of title, and plaintiff proved title in herself to the forty-acre tract by a deed to William J. Dewald, one of the heirs of Jackson Dewald, from the other heirs, and a deed from William J. Dewald to her. There was no evidence tending to overcome the proof of title made by the plaintiff, and defendants did not show any title in themselves, but claimed title to the adjoining lands on the west through Dora Surber, one of the heirs of Jackson Dewald. It was proved that the fence was not on the west line of plaintiff's land. It was built by Jackson Dewald when he owned the lands on both sides of said line, and it did not run directly north and south. From the south line of the forty-acre tract now owned by plaintiff it ran northward, diverging somewhat toward the east, so as to leave a wedge-shaped piece of land between it and the west line of the tract. When the controversy arose which resulted in the suit, the defendant Wellington Mertz said that he thought they ought to have a surveyor to find out where the line was. The plaintiff employed one surveyor and defendants another, and they differed as to the location

of the line, but neither surveyor found the line to be where the fence was. According to defendants' surveyor the line was somewhere near the fence at the south end, and, as it diverged toward the east, a wedge-shaped piece was left between it and the line. According to plaintiff's surveyor the boundary line was still further west, and the difference seems to have arisen from the fact that plaintiff's surveyor followed the government field notes while the other surveyor followed the pocket field notes of a former surveyor, in which the government field notes giving the distance from the north-west corner of the section had been increased one chain by altering the figures. The only defense made was, that there was an agreement between the heirs of Jackson Dewald as to the location of the boundary line which was binding on the plaintiff.

The evidence tended to prove that after the death of Jackson Dewald his five heirs-at-law undertook to divide the land which they inherited from him. It was located in a fractional section, and there was, as a matter of fact, a surplus to be divided between the different subdivisions. According to their understanding of the amount of land to be divided, William J. Dewald was entitled to twenty-six and one-half acres, and they borrowed an old chain which belonged to a surveyor, from which two links were missing, and measured off of the east side of the forty-acre tract in question twenty-six and one-half acres, as they understood it, for his share. Dora Surber, another of the heirs, was allowed twenty-six and one-half acres off the east side of the land west of the forty, which would leave fourteen and one-half acres between the two. The parties measured to where they supposed the west line of the forty-acre tract was, and drove a stob and set some stakes where they supposed the line was. They agreed to the division or partition, and Dora Surber, who took the twenty-six and one-half acres on the west, testified that it was agreed that the dividing line should be along the old fence at the south end and a little west of it

at the north end, which took in a row of trees in the old orchard. William J. Dewald bought from the other heirs the fourteen and one-half acres between the lands set off to him as an heir in the division and what was supposed to be the west boundary line of the forty-acre tract, or forty-one acres with the surplus as they understood it. The evidence for the defendants was that the line was agreed upon and the division was satisfactory to all parties. That was the agreement relied upon as establishing the boundary.

Whenever the boundary line between adjoining owners of land is unascertained or is in dispute, they may establish it by a parol agreement and possession in pursuance of the agreement, and a line so established will be binding on the parties and their privies. (*Yates* v. *Shaw,* 24 Ill. 368; *Sheets* v. *Sweeney,* 136 id. 336; *Clayton* v. *Feig,* 179 id. 534; *LaMont* v. *Dickinson,* 189 id. 628; *Grubbs* v. *Boon,* 201 id. 98.) The effect of the agreement is not to pass title to the real estate from one party to another, which cannot be done by parol, but to fix the location of an unascertained or disputed boundary, and if the location of the true boundary line is known to the owners they cannot transfer the land from one to the other by an agreement changing such location. So, also, if the intention of the parties is merely to ascertain the true line, and in doing so an erroneous line is agreed upon by accident or mistake, the agreement will not be binding and the line will not be established merely because of the agreement. (5 Cyc. 934; 4 Am. & Eng. Ency. of Law,—2d ed.—862.) In such a case there is merely a failure to find the true line through accident or mistake, and not an agreement to adopt an unascertained or disputed line. The evidence in this case tended to prove, not that the parties agreed upon an indefinite or unascertained line or one that was in dispute, but that they measured from the north-east corner of the tract with no other intention than to find the true boundary, and by mistake, or for the reason that the chain was not of the proper length, supposed that the true

boundary was in a different place from where it in fact was. The verdict appears to have been against the preponderance of the evidence.

The court, at the request of the defendants, instructed the jury that the law assumes that those in possession of land are rightfully in possession, and that one who claims they are unlawfully in possession must satisfy the jury, by a preponderance of the evidence, that he has a good title to the same. Plaintiff proved title to the forty-acre tract, which included the land west of the rail fence, and was entitled to recover unless the defendants overcame the *prima facie* case so proved. (*Birge* v. *City of Centralia,* 218 Ill. 503.) The law did not assume that the defendants were rightfully in possession of land to which they had no legal title, and it was for them to prove the alleged agreement by which a different line than the true one was established. The instruction was wrong in that respect, and also in advising the jury as to the degree of proof required of plaintiff. It is always error to instruct a jury in a civil case that the party having the burden of proof must furnish evidence which will satisfy the jury, and instructions of this character have so often been condemned that the rule is well understood and firmly established. *Herrick* v. *Gary,* 83 Ill. 85; *Graves* v. *Colwell,* 90 id. 612; *Ruff* v. *Jarrett,* 94 id. 475; *Rolfe* v. *Rich,* 149 id. 436.

The seventh instruction given to the jury was also incorrect, not applicable to the case and misleading. It was incorrect in excluding heirs and privies of parties to a parol agreement from taking advantage of the Statute of Frauds. It was also wrong in assuming that the alleged agreement related to a disputed boundary line between Dora Surber and William Dewald. As a whole, the instruction had no application to the issue to be decided, and it should not have been given.

The judgment is reversed and the cause remanded.

*Reversed and remanded,*