**CUMMINGS v. WILLIAMS et al.   (No. 8607.)***

(Court of Civil Appeals of Texas.   Galveston. Feb. 19, 1925.   Rehearing Denied March 12, 1925.)

**1. Boundaries ⬲46(1)—Issue of agreed boundary line held not raised, in view of mutual mistake of fact.**

Where parties, both being mistaken in thinking old fence marked true boundary, agreed to replace it with concrete coping, and at instance of one, with acquiescence of other, placed coping on line of pickets of fence, rather than post line, facts *held* not to raise issue of agreed boundary line, there being no intent to settle disputed line, in view of mutual mistake of parties.

**2. Boundaries ⬲46(2)—Purchasers held not entitled to insist on boundary fixed by alleged agreement where no reliance shown.**

In absence of pleading and proof that purchasers relied on alleged boundary agreement, made under mutual mistake as to true boundary, or at least had knowledge of such agreement, purchasers *held* not entitled to hold any of adjoining owner's land.

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by Peter Cummings against E. P. Williams and others. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

Marsene Johnson, Elmo Johnson, Roy Johnson, and Marsene Johnson, Jr., all of Galveston, for appellant.

C. G. Dibrell and McDonald & Wayman, all of Galveston, for appellees.

PLEASANTS, C. J. This is a suit in the form of an action of trespass to try title, brought by appellant against the appellees. The land sued for is a strip 44 feet and 4 inches wide and 128 feet and 8 inches long along the northern ends of lots 12, 13, and 14 in the southwest quarter of outlot No. 68 in the city of Galveston. As developed by the answer of defendants and the evidence, the only question in the case is one of boundary.

After a plea of not guilty, defendants' answer contains the following pleas and prayer:

"That the amount of land in controversy in this suit is approximately 2 feet 2 inches in width and 128 feet 8 inches in length, and that it is a boundary dispute between the plaintiff and defendants. That the division fence between the lands of plaintiff and defendants is now, and has been for more than 20 years, on the same line, and has been since plaintiff acquired the property alleged in his petition on, to wit, the 2d day of September, 1919, up to the 14th day of March, 1922, and since said time, and that the plaintiff acquiesced in said division line from the date that he acquired said property up to the said 14th day of March, 1922, and that he is bound by his acquiescence, and should not be allowed to complain that said fence line is not now the boundary line.

"Defendants further allege that on the —— day of July, 1920, the plaintiff caused to be torn down the fence as it then existed separating the property of plaintiff and defendants, and caused to be erected on the line of said fence a concrete curbing; that at said time the defendants protested that plaintiff was not having said concrete curbing placed in the proper place, and that the plaintiff represented that he was having said curbing placed on the proper boundary line, and that plaintiff, by his representations that said curbing was being placed on said boundary line, and by his acts in having said curbing placed thereon, is estopped from denying that said curbing is the proper boundary line.

"Defendants further allege that the deed to

⬲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 6, 1925.

plaintiff provides he shall have 44 feet 4 inches frontage on Tremont street and 128 feet 8 inches in depth, and that plaintiff has said frontage on Tremont street and said depth.

"Wherefore defendants come and pray the court that the prayers of the plaintiff be in all things denied, and the boundary line between the property of plaintiff and defendants as the same now exists be established, and for all costs of suit, and for such other and further relief to which they may be entitled in law and in equity."

By trial amendment defendants pleaded as follows:

"That heretofore, to wit, July ———, 1920, the boundary line between the lands of· plaintiff and the defendant was by agreement of the parties fixed at the point where same now exists.

"And defendants further allege that in the month of July, 1920, the plaintiff caused to be torn down the division fence as it then existed separating the property of plaintiff and defendants, and caused to be erected on the line of said fence a concrete curbing; that at said time the defendants protested that plaintiff was not having said concrete curbing placed in a proper place, and that the plaintiff represented that he was having said curbing placed on the proper boundary line, and that defendants, relying upon plaintiff's representations that plaintiff was having said curbing placed on said boundary line, erected valuable improvements to the value of $700 within the property next to and adjacent to the boundary line as fixed and designated by plaintiff and partially upon the property claimed by plaintiff, and that the plaintiff, by his representations that said division curbing was being placed on the said proper boundary line and by his acts in having said curbing placed thereon, is estopped from denying that said division curbing is the proper boundary line, and in the event plaintiff should be permitted to take advantage of his acts set out above defendants will suffer damage in the sum of $700.

"Wherefore defendants pray for judgment as in their original answer, etc.; or, in the alternative, that they have judgment against plaintiff for their damages, to wit, $700, and all costs."

The cause was tried with a jury. The only issue submitted to the jury was whether there was an agreement to fix the boundary line between plaintiff and defendants. The jury having answered the question in the affirmative, judgment was accordingly rendered in favor of defendants. There is no material conflict in the testimony. The record discloses the following facts:

Marsene Johnson is the common source of title. Lots 12, 13, and 14 in the southwest quarter of outlot 68 each front south on Avenue P, and extend back between parallel lines a distance of 120 feet to an alley. The aggregate width of these lots is 128 feet 8 inches. On September 2, 1919, appellant by deed of that date acquired title from Johnson to the north 44 feet 4 inches of these lots, which is bounded on the north by the alley and fronts west on Tremont street. By two subsequent deeds, one dated March 23, 1920, and the other January 24, 1921, appellees Williams and wife acquired title to the south 75 feet 8 inches of these lots. Each of these deeds place the northern boundary of the property conveyed 75 feet 8 inches north of Avenue P. On April 25, 1922, Williams and wife conveyed to appellee Schuler a frontage of 48 feet 8 inches on Avenue P, and extending back between parallel lines 75 feet 8 inches, and on July 1, 1922, they conveyed to appellee Budd and wife a frontage of 24 feet 8 inches on Avenue P, and extending back between parallel lines 128 feet 8 inches. After these conveyances, Williams and wife only owned a frontage on Avenue P of 54 feet 4 inches, extending north along Tremont street a distance of 75 feet 8 inches.

Prior to the purchase by either party from the common source, there was an old fence which appellant Cummings thought was on the true line between him and appellees. He believed this until he had a survey made in November, 1921. Before this he had measured his Tremont street frontage and found he had the 44 feet 4 inches called for in his deed, not knowing at the time that he was in the alley over 2 feet to make up his complement of land. Appellee Williams also testified that he thought the old fence was on the true line until Cummings had the survey made in November, 1921.

In July, 1920, Williams erected a garage on a part of the property he later sold to Schuler. He put this on the line of the old fence and so close to Cummings' residence that the eaves of the garage projected over it. When this garage was partly completed, Cummings and Williams decided to take down the old fence, supposed to have been on the true dividing line, and put a concrete coping for a short distance back from Tremont street. Contractor Parsons, who was then working for Williams, was engaged to put in the coping, the expense to be borne equally by Cummings and Williams. The contractor set his forms for the concrete coping, which was 6 inches wide, so that the center of the coping would be just where the center of the posts of the old fence had stood. When Cummings saw where the forms for the concrete coping were placed, he objected, claiming that the posts of the old fence were on his land, and that the center of the coping should be just where the pickets, which formed the south side of the old fence, had stood, and insisted that the contractor place the forms 3 inches further south. After discussing this matter with Williams and his wife, they consented that the coping should be constructed in accordance with Cummings' contention, and it was so constructed. This coping, as it was then placed and now stands, where it begins at Tremont street, is 2 feet 2 inches north of the true boundary line, and is 3 feet north of this line at the garage before

mentioned. The evidence further shows that if the line, fixed by the center of the coping, is extended the whole length of appellant's property at its eastern terminus, it will be several feet further north of the true line.

[1] We agree with appellant that these facts do not raise the issue of an agreed boundary line. Both parties thought that the old fence was on the line and agreed to take it down and replace it with a concrete coping. The whole purpose and intent of the agreement was to mark with a coping what both parties believed was the true location of the line, and not to settle any dispute as to its location. If there was any dispute between the parties which was settled by agreement, it was only whether the posts or the pickets of the old fence marked the exact location of the true boundary line. We hardly think the evidence shows any dispute about this. Williams testified that there was very little argument over it, and, as it only involved 3 inches of ground, he let Cummings put it where he wanted it. Mrs. Williams testified:

"And the next morning, before Mr. Williams left to go to his work, Mr. Cummings phoned and said the contractor was over 3 inches on his ground too far. Mr. Williams said: 'I didn't tell him where to put the frame; have it set where you want it.' And I went out after Mr. Williams had gone, and asked the contractor what was the matter, and Mr. Cummings was there then, directing the contractor. The contractor then moved his frames south a distance of some inches, and Mr. Cummings was there at that time, and I saw him measuring his frontage, beginning at the alley. He said he wanted his frontage to show 44 feet 4 inches, and that is why he wanted this frame moved, and the contractor then moved his frame over south about 3 inches and reconstructed them and built the partition coping there."

This was, it seems to us, nothing more than an acquiescence in appellant's contention. If, however, this evidence shows an agreement or contract as to the location of the line, when the undisputed evidence shows that both parties were mistaken in believing that the fence was on the line, their agreement that the pickets rather than the posts of the fence marked the exact location of the line would not make the agreement that any part of the fence was on the line binding upon either. Appellant pleaded that any agreement made as to the location of the line was made under a mutual mistake of fact and was not binding.

To enforce a mutual mistake, Judge Wheeler said in Harrell v. De Normandie, 26 Tex. 126, "defeats the real intention of the contracting parties. A contract thus made in mutual error is wanting in one of the essential elements of a contract. 'Contracts made in mutual error, under circumstances material to their character and consequences seem, upon general principles, invalid.'"

The principle has been applied to all kinds of contracts, including boundary agreements. 55 Am. St. Rep. 512, note; Allen v. Hammond, 11 Pet. 63, 9 L. Ed. 633; U. S. v. Charles, 74 F. 142, 20 C. C. A. 346; U. S. v. D'Olier · Eng. Co. (D. C.) 215 F. 211; Sherwood v. Walker, 66 Mich. 568, 33 N. W. 923, 11 Am. St. Rep. 538; 9 C. J. 369, 375.

In the case of Murphy v. Benson, 245 S. W. 249, in which a writ of error was refused by our Supreme Court, the Court of Appeals for the Third District, in refusing to recognize as an agreed boundary line one established by mutual mistake of the parties, gives the following reasons for holding the agreement unenforceable:

"First, that at the time of the agreement no doubt, dispute or uncertainty existed in the minds of the parties thereto; second, that the agreement was based on mutual mistake as to the identity of the land about which the parties were agreeing upon the division line. The testimony of Lassater, Chick, and Choate is all to the effect that there was no dispute or doubt in the minds of the parties which they were settling · by an agreed line, and that such line was placed where it was and the fences built upon the mistaken belief that the east and west boundaries of the survey were the Davis and Rae fences. While some measuring was done, it was upon the mistaken belief above referred to, and not in settlement of any dispute. Chick, who assisted them, pointed out his gate post on survey 7, to the north of No. 10, as being the middle point of both surveys, and they ·adopted that point in running the fence south through what they thought to be the middle of survey No. 10. The mistaken belief of the parties itself was doubtless induced by the representations of the agents of Miss Benson at the time the land was sold to them; all parties being honestly mistaken as to the boundary lines of the survey. In these circumstances, we have no doubt that such agreement would not be conclusive if shown to be erroneous."

In Purtle v. Bell, 225 Ill. 523, 80 N. E. 350, it is said:

"If the line is not in dispute, and the intention of the parties is merely to determine the exact or true line, and in so doing an erroneous line is agreed upon by accident or mistake, the agreement will not be binding, and the line will not be established, merely because of the agreement previously entered into between the parties. In such a case there is a failure to find the true line through accident or mistake, and not an agreement to adopt an unascertained or disputed line; hence the same rule does not apply with reference to possession, estoppel, etc."

In Marks v. Madsen, 261 Ill. 51, 103 N. E. 625, the court said:

"The court, by an instruction, submitted to the jury the question whether the owners of the adjacent portions of the lot mutually agreed upon a division line and established it as between themselves, and afterwards a fence was built upon the line, and applied the rule concerning boundary lines established by agree-

ment. There was no evidence upon which this instruction could be based. The rule only applies under two conditions: First, where the line is in dispute; and second, where it has not been ascertained. And in either case the agreement is for the purpose of establishing the disputed or unascertained line. Sonnemann v. Mertz, 221 Ill. 362, 77 N. E. 550; Purtle v. Bell, 225 Ill. 523, 80 N. E. 350. The only evidence relating to the location of the line by adjacent owners was that Mrs. Routzong measured off 40 feet for the purpose and with the intention of ascertaining the true line, and if by accident or mistake the measurement was wrong or the line not a true one the fact of the measurement would bind no one."

In the leading case of Randleman v. Taylor, 94 Ark. 511, 127 S. W. 723, 140 Am. St. Rep. 141, the court said:

"The evidence in the case at bar shows that appellant and appellee agreed upon a boundary line under the belief that it was the true line, when in fact it was not, and that immediately the timber was cut and removed from the land. In short, it was an erroneous line agreed upon by mistake. In such cases the agreement is not binding, but may be set aside by either party when the mistake is discovered, unless there is some element of estoppel which prevents him. 4 Am. & Eng. Enc. Law (2d Ed.) p. 862. It is only where the true line is unknown or is difficult of ascertainment, and the parties establish the line to settle a disputed and vexatious question as to the boundary line between them, that the agreement is binding. In such cases the mutual concessions between the parties is a sufficient consideration for the agreement. In the present case the boundary line was not incapable of ascertainment. The parties agreed to the line under the mistaken belief that it was the true line."

[2] Since both parties testified to the mutual mistake, the trial court should have held as a matter of law that the alleged agreement, if made, was inoperative. We think it also clear that the pleading and evidence both fail to show any acquiesence or estoppel binding upon appellant.

In no event could the judgment be affirmed as to the appellees Schuler and Budd. Their deeds from Williams, which were made subsequent to the alleged agreement, do not call for the old fence line, and fix their northern boundary line 75 feet 8 inches north of Avenue P. There is no pleading or evidence that they purchased upon the faith of the alleged agreement, or that they even knew of such agreement. Under these circumstances it is manifest that they have no right to hold any of appellant's land under the alleged agreement between him and their vendor.

From the conclusion above expressed, it follows that the judgment of the trial court should be reversed and judgment here rendered for appellant; and it has been so ordered.

Reversed and rendered.