DAVIS v. DAVIS et ux.

No. 6984. Decided March 12, 1947. (178 P. 2d 394.)

See 11 C. J. S. Boundaries, Sec. 86; 8 Am. Jur. 802 et seq.; Establishment of boundary lines by agreement or acquiescence, notes 69 A. L. R. 1485 et seq., 113 A. L. R. 432. What amounts to an agreement establishing boundary lines, note, 69 A. L. R. 1481.

*Christenson & Christenson,* of Provo, for appellants.

*I. E. Brockbank,* of Provo, for respondent.

PRATT, Justice.

Rex Davis and Worthy Davis own adjoining pieces of what was once the farm of their father. Prior to his death the father divided the farm among his heirs. The farm was surveyed by a licensed surveyor, A. R. Shelton, and descriptions drawn of the different pieces based on his survey. After the death of the father a dispute arose as to where the lines described by the descriptions lay on the land. Rex Davis then called upon another surveyor, Elmer A. Jacob, to get him to fix the lines on the land. Jacob agreed to make the survey, but did not set the time to do so. Later Jacob discovered that there was a dispute about the lines and when Rex Davis came the second time Jacob told him that he wouldn't make the survey,

"at all unless the parties in dispute would get together and agree to accept my survey."

This was also told counsel for the parties at a later date. No further arrangements were made at that time. At a much later date the attorneys for both parties contacted Jacob and gave him to understand that the parties

"were agreeable to selecting me to make the survey."

Jacob then proceeded to make the survey in company with counsel and the Davises, each group carrying maps to check. Soon after he started Rex Davis made a protest about the

general method of the survey to Jacob. This survey shifted a certain line to the south of where everyone, including Worthy Davis, had presumed that it was located on their adjoining lands. Before the Jacob survey every one concerned had assumed that a certain well was located on the land belonging to Rex Davis, Jacob's survey showed it to be 1.1 feet over on Worthy Davis' land. Rex Davis repudiated the survey entirely and according to his evidence he repudiated it at the time it was being made.

The survey by Jacob was made on the 7th and 8th of April, 1945. Worthy Davis filed his complaint on May 16, 1945. In it he asks the court to temporarily enjoin the defendant and his wife from molesting or interfering with the plaintiff in the construction of fences and ditches in accordance with the Jacob survey. He also prays that the defendant be required to set forth his claims to plaintiff's lands and the dividing line

"and that the true and correct location of said dividing line may be by Decree of this Court adjudged and determined."

Plaintiff seeks to have his title quieted against claims by defendants and defendants be permanently enjoined from interfering with the fences and ditches constructed on the said division line.

At no place in his complaint does the plaintiff allege an agreement between himself and defendant to be bound by any line. His paragraph No. 6 dealing with the matter is as follows:

"6. That Elmer Jacob, Surveyor and Leslie McEwan, Chainman were employed by the plaintiff and defendant, Rex Davis, to establish the boundary line between the lands of the said plaintiff and the lands of the said defendant, Rex Davis, and to locate and establish the right-of-way herein described."

This is followed by an allegation that the surveyor established the line in the presence of the parties and their counsel.

Rex Davis and Mr. Worthen, his attorney during the negotiations, denied any agreement with Worthy Davis to

be bound by Jacob's survey. In many ways the testimony of Worthy Davis corroborates this denial. He stated in regards the negotiations prior to the survey:

"Mr. Worthen asked me if I would consent to Mr. Elmer Jacob making the survey of that farm, that my brother Rex had been to him two or three times and wanted a surveyor. I ask Mr. Worthen if he was a licensed surveyor, which he stated he was. I said, 'I don't know the man; I don't know if I ever seen him, but if he is a licensed surveyor, he is good enough for me'."

The court found in paragraph 9 of its findings of fact:

"That the plaintiff, Worthy Davis, and the defendant, Rex Davis, agreed to accept the boundary lines determined by the said surveyor, Elmer Jacob, on the 7th and 8th days of April, 1945, as the true boundary lines between their respective lands and agreed to accept the location of the right-of-way on the lands."

In the face of the pleadings and the denial by Rex Davis and also the lack of a positive assertion by Worthy Davis to that effect, this finding is not supported by the record. Incidently the decree first entered in the case called upon the surveyor Jacob to re-establish the lines of his survey before final decree was entered. This the surveyor attempted to do, but as to one call specified as "East 17.53 chains" he could not do so, as his initial survey there was not intended to be final. The lower court sought to supply this deficiency. If, however, the parties had agreed to abide the survey of Jacob—as the court found—and Jacob failed to fulfill his end of the bargain certainly the lower court could not complete the bargain for Jacob, and bind the parties to it. We mention this merely to show the uncertainty of the foundation for the lower court's finding quoted above.

We are given a clear insight into the basis of the trial court's reasoning by his decision as contained in the transcript. It states:

"From the manner in which Mr. Jacob was employed, and the manner in which he conducted his survey, and the cooperation manifestly lent to it by the defendant Rex Davis personally and through

his counsel, particularly the fact that he went in the first instance with the evidence that he had in respect to the position of the parties, being his abstract and decree, and his continued cooperation, either personally or by counsel throughout, the court feels establishes by a vast preponderance of the evidence the agreement of the parties to accept the findings and the locations of the engineer and surveyor, Mr. Jacob, as the boundary line between the parties regardless of the description."

We believe that there is insufficient evidence to support the proposition that the parties agreed to be bound by the line surveyor Jacob established regardless of its accuracy.

We must clearly distinguish this case from the cases where the parties agree that a line already drawn on the land shall be the boundary line and acquiesce in that line and improve up to that line marking it as the boundary line. In the case at bar the alleged agreement was entered into before any line was marked on the ground. Since the lines have been drawn there seems to be little question that the defendant has not acquiesced or accepted them in any way.

There can be no doubt that both parties at all times sought to establish the true boundary line between the properties. Mr. Jacob was employed to see if they could not settle their differences by agreeing upon his survey. He was not employed to compromise conflicting claims. The descriptions in the deeds do not conflict. Jacob was to find the line described. We do not see sufficient evidence to show that he was employed as an arbitrator. Defendant was not estopped to question his survey. *Spring* v. *Hewston,* 52 Cal. 442; *Guedici* v. *Boots,* 42 Cal. 452.

The lower court having decided that Jacob's survey was by agreement the line regardless of its accuracy sustained the plaintiff's objections to several items of evidence which tended to show that Jacob in making his survey was mistaken in assuming that a certain basic directional line ran true east and west. This was error. *Coon* v. *Smith,* 29 N. Y. 392, is the closest case on its facts to the case at bar that we have been able to discover. In that case one

of the parties to the agreement to survey discovered, about three weeks after its completion, that a mistake had been made in the survey. Coon brought the action against Smith for trespass and the court allowed Smith to show the mistake and to have the true boundary line established. In the case of *Purtle* v. *Bell*, 225 Ill. 523, 80 N. E. 350, at page 351, wherein a mistake was made by the surveyor in his survey the court states:

"If the line is not in dispute, and the intention of the parties is merely to determine the exact or true line, and in so doing an erroneous line is agreed upon by accident or mistake, the agreement will not be binding, and the line will not be established, merely because of the agreement previously entered into between the parties."

In *Guedici* v. *Boots*, 42 Cal. 452, a commission was appointed by the tenants in common to partition the land between them. The commission partitioned the land and in doing so made a mistake in fixing the boundary lines on the land. It was held that an equity court had the power and would correct the mistake. See also, *Kimes* v. *Libby*, 87 Neb. 113, 126 N. W. 869; *Sonnemann* v. *Mertz*, 221 Ill. 362, 77 N. E. 550; *Hatfield* v. *Workman et al.*, 35 W. Va. 578, 14 S. E. 153; 5 Cyc. 934 and 69 A. L. R. 1430, at pp. 1485-1489.

There is convincing evidence in the record, in the form of testimony given in open court by surveyor Shelton, who had surveyed the property since Jacob made his survey, which indicates that Jacob was inaccurate in his survey in that a certain fence line used as a base by Mr. Jacob was not true east and west.

The true line according to the descriptions contained in the deeds of the parties should be decreed by the court to be the division line between the plaintiff's and the defendant's property. This case is remanded for a new trial to have determined the true boundary line as it should be set out upon the land in question.

The costs of the surveys on the land, the building of permanent monuments and fences as ordered by the court were assessed evenly between the parties by the court below. This was proper. As regards the assessments of those costs the lower court's judgment is affirmed. Costs to the appellants.

McDONOUGH, C. J., and WADE, WOLFE, and LATIMER, JJ., concur.