**GRAHAM MAGNETICS INCORPORATED,
Appellant,**

v.

**Earl REGION, Appellee.**

No. 17245.

Court of Civil Appeals of Texas,
Fort Worth.

Sept. 24, 1971.

Cantey, Hanger, Gooch, Cravens & Munn, and Sloan B. Blair, Fort Worth, for appellant.

McGown, Godfrey, Decker, McMackin, Shipman & McClane, Warren W. Shipman, III, and John B. McClane, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

The suit as resolved at time of the trial before the court, without a jury, presented the question of whether Earl Region, as the vendor in a real estate transaction, was entitled to receive a sum demanded from the vendee, Graham Magnetics Incorporated, as the (remainder of) consideration owed by Graham Magnetics for the property.

The trial court's judgment awarded Region said approximate $40,000.00 amount by what might be treated as a personal judgment. Graham Magnetics Incorporated brought the appeal.

Affirmed.

Since the respective rights and obligations of the parties, under the undisputed facts, were to be resolved as a matter of law we believe that the judgment would be correct under either of two theories.

The first of these is to be observed in Restatement of the Law, Contracts, Sec. 502, "When Mistake Makes a Contract Voidable". Primarily the subject of discussion of the authority is the right of a party to an avoidance and escape from liability for specific performance under a contract when it is discovered that both parties thereto had contracted under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction. It is stated that there may be an avoidance by a party if enforcement of the contract would be materially more onerous to him than it would have been had the fact been as the parties believed it to be, except "(c) where it is possible by compensation to the party injured by the mistake to put him in as good a position as if the transaction had been what he supposed it to be, and such compensation is given."

Under "Comments" of the section is the following: "(b) Unless the mistake is harmful to a party, he cannot avoid it even though the fact was a material one. Even where there is a wrongful breach of contract specific performance is sometimes granted the wrongdoer, if the breach is one that can readily be compensated in damages. *Where there is merely an innocent mistake, similar adjustment is more readily allowed in order that a contract shall be substantially carried out.*" (Emphasis supplied.)

Under an illustration of the rule of law is the following example: "A contracts to sell and B to buy Blackacre. As part of the price B agrees to assume a mortgage on Blackacre, owned by C. Both A and B suppose the amount of the mortgage is $5000. In fact it is only $4000. The contract is not voidable by B, since the mistake does not harm him, but is voidable by A, unless B agrees to pay $1000 more than the price fixed in the contract."

In the example copied above the supposed mortgage belonged to a third party.

The same thing is true in the situation under consideration. Here Region (who had agreed to sell) and Graham (who had the right to, and did, exercise its option to purchase) would be in position entitling Region to avoid any obligation to transfer the property unless Graham, in receiving it, would agree to pay the approximate $40,000.00 understood by both parties to be part of the price of the property. It was part of the price because the supposed mortgage was greater (as of the material time) by that amount than was the actual case.

Graham wanted Region's specific performance of conveyance without obligation to pay the $40,000.00, but, nevertheless desired it even if he was obliged to pay said (additional) sum. By the agreement and stipulation of the parties pursuant to trial whereby Graham did take title from Region the $40,000.00 was (in effect) placed in escrow pending the determination of whether Region was entitled to it. Since there was a transfer of title to Graham before the case was tried its return obligation to pay the (escrowed) sum was fixed by operation of the law under the principle of law considered.

By the Restatement is noted that no Texas case was found involving the legal theory above discussed.

■ Under the alternative (or additional) theory by which we believe the judgment may be justified, viz: Region is entitled to reformation of the writing evidencing the parties' contract, with an enforcement thereof as reformed, we note the factual background of the case.

By the parties' original agreement of July, 1965 Graham received from Region a lease of the premises under consideration, with an option to purchase. By such contract instrument the price to purchase was to be increased by $20,000.00 if not exercised by Graham before the expiration of 7½ years from the beginning of the lease term.

The terms of the instrument relative thereto read as follows:

"As additional consideration for this lease, Lessors hereby give and grant to Lessee the right and option to purchase the leased premises and all buildings and improvements located thereon either

"(1) At or before the expiration of 7½ years from the beginning date of the term of this lease, for $80,000, less any pre-payment penalty for the payment in full of any loan against the premises existing at such time and with lessee assuming the balance of said loan, or

"(2) After 7½ years and until the expiration of the term of this lease for $100,000, less any pre-payment penalty for the payment in full of any loan against the premises existing at such time and with Lessee assuming the balance of said loan, provided that if Lessee exercises this option at the end of the term of this lease, then said premises to be conveyed free and clear of all liens and encumbrances."

The parties had understood that the mortgage to be placed on the subject property would be in the principal sum of $190,000.00, and that the amortization thereof (with interest, etc., included) would be, by the installment payments to accrue if there be no prepayment of it or of any part of it, fully paid off at the same approximate time as the lease expiration. With this noted the right of Graham to receive the property at a price of exactly $100,000.00 free and clear of encumbrances upon its exercise of the option to purchase as of such time is readily understood.

And indeed, Region had obtained a "loan commitment" from a lending agency in the $190,000.00 amount before incurring the expense of constructing the building and improvements on the property to be covered by the lease. Interim financing to cover the cost, or part of the costs, of construction was necessary and arranged by Region. However, upon completion of

construction the lending agency which had made the $190,000.00 "loan commitment" refused to supply such.

Under the circumstances Region felt compelled to do the best he could to find $190,000.00 elsewhere. He was unable to find it, and finally decided to take the $125,000.00 loan he was able to obtain. He gave a mortgage on the property to secure such $125,000.00 loan and treated his transaction with Graham as though the loan (and mortgage) was in the amount of $190,000.00 both parties had understood it would be. In other words he proceeded to "carry" $65,000.00 of the $190,000.00 himself just as though he was a third-party holder of a second mortgage lien (with interest payable thereon at the same rate and its amortization period identical with that of the note, secured by first mortgage lien, for $125,000.00). By credits incident to portions of Graham's payments credited thereto Region's claim was reduced to the approximate sum of $40,000.00 for which he obtained judgment.

Graham discovered what has just been detailed in February, 1970, when it declared upon its option. Its officers reached the conclusion that Region must have made too much money by erecting the improvements on the land for its use. Born of such conclusion there was scrutiny of the language of the written contract and decision to contest Region's right, as condition upon which would be willing to convey title to claim that Graham would then owe him the balance owing on the original $40,000.00 (minus), in excess of the $80,000.00 (additional consideration) called for in paragraph (1) relative thereto, with Region in turn obliged to continue to "carry" the balance owing as a loan.

We have already mentioned that by preserving the rights of the parties by agreement, etc., pursuant to which we may treat the circumstances as though Graham had placed "in escrow" the $40,000.00 (minus) its option to purchase was exercised, Graham had acquired title to the property and

assumed the obligations to make future payments on that third-party note, originally in the amount of $125,000.00.

When we examine the record of the evidence, we find that the parties' actual agreement was upon "price" to be paid to and received by Region as return performance owed or to become owing by Graham upon an exercise of the option to purchase. In view of the time Graham exercised its option that price was to be $80,000.00 plus the principal balance of what was to have been a note in the original principal sum of $190,000.00.

By the written language of the contract instrument its provisions for payment, upon exercise of the option to purchase, would have exactly fitted Graham's intentions and understanding of its obligation upon the matter of "price" to be paid Region if the lending agency had honored its "loan commitment" and advanced the $190,000.00 to Region, taking as security a mortgage on the property.

By the writing we are convinced that since the matter of "price" is material and controlling; and that the matter of "formula" by which such "price" might be ascertained would be immaterial and of no controlling effect where its application would be to result in a figure at variance with "price" for which the parties intended to contract.

The *material* factor for our scrutiny is that "consideration" agreed upon, if it was, which Graham promised as its return performance.

Most certainly did the parties intend to express and define such consideration when their contract was reduced to writing.

That what they did express by their writing—purporting to reduce their contract to that form—did not express and define their actual agreement becomes obvious when either of two opposing hypotheses are supposed.

First. Suppose that before any substantial interest had accrued on the note Region had unexpectedly come into $190,000.-00; that he decided to pay off the note, with the idea that he would receive amounts, as return on his investment, equivalent to what the mortgagee would have received had the note remained unpaid. Could there be any reasonable belief that the parties, by their original contract, had so contracted that Graham should have a profit in the amount expended to pay off the note, with Region to suffer a corresponding loss?

Second. Suppose that Region had found it advisable—and himself able—to borrow $250,000.00 upon the security of the mortgage. Could there be any reasonable belief that the parties, by their original contract, had so contracted that any right of Graham to exercise its option to purchase on a basis of the unpaid principal balance of an indebtedness of $190,000.00 would be defeated?

The answers demanded under either hypothesis could not be in doubt.

The *material* consideration of the parties' contract was the measurable "price" to be paid—rather than any agreement upon a formula by which such price should be computed. That the writing in which the parties intended to state such failed in that respect is obvious from the undisputed evidence.

Could it be said that Graham and Region did *not* intend by the written contract to provide what Graham's return performance, as consideration should be; i. e., what "price" should Graham become obligated to pay upon exercise of its option? It would be unreasonable to arrive at such conclusion.

Restatement of the Law, Contracts, Sec. 504, "Reformation for Mutual Mistake", recites that, with certain exceptions inapplicable to the instant situation, where both parties have an identical intention as to the terms to be embodied in a proposed written contract and a writing executed by them is materially at variance with that intention, either party would be entitled to a decree that the writing be reformed so that their true intention would be expressed.

Among the Texas cases under this section is Harrell v. De Normandie, 26 Tex. 120 (1861) in which the court said: "The parties here did not intend, the one to sell and the other to buy certificates worth fifteen hundred dollars for eight hundred and twenty dollars. That was not the contract within the intention of the contracting parties. What they did intend was, on the part of the seller to submit to a certain discount  *  *  *  and on the part of the buyer to make a certain profit  *  *  * and this is the contract which the law will effectuate by correcting the error  *  *  *." See 45 Am.Jur., pp. 606–610, "Reformation of Instruments," Sec. 45, "Generally," Sec. 46, "Mistake, Generally" and Sec. 38, "Description". See also 49 Tex.Jur.2d p. 619, "Reformation of Instruments", Sec. 18, "(Defects Correctable)—In general".

We believe the following cases cited by Region support his contention that reformation for mutual mistake of the parties is proper in this case: Bates v. Lefforge, 63 S.W.2d 360 (Tex.Com.App., 1933) where evidence showed the parties had intended one would be liable to pay the cost of street and highway improvements and not merely taxes on such; and Hammond v. Barnard, 258 S.W. 916 (Fort Worth Civ. App., 1923, no writ hist.) where evidence showed the parties intended that one assume obligation to pay only the principal and interest to accrue subsequent to date of a deed, and not such as had accrued prior thereto.

What has been said above covers all the points of error save one wherein it is contended that there was no evidence, or alternatively insufficient evidence, that there was agreement antecedent to the drafting of the written contract that it would specify that any loan that might be placed

against the property would be in the amount of $190,000.00 or any other specific amount. There was no such evidence. This point is overruled as immaterial, not being controlling of the outcome of the case.

Judgment is affirmed.